HOWARD WOOD, et al., Petitioners, v. ROBERT J. BYRNE,
Secretary of State, Respondent.

(232 N. W. 303.)

Opinion filed September 25, 1930.

*Lemke & Weaver,* for petitioners.

*James Morris,* Attorney General, for respondent.

Burke, Ch. J. On July 7, 1930, a petition with 20,755 signatures for the repeal of article 20 of the constitution of the State of North Dakota was presented to the secretary of state for filing. Thereafter, and on the 10th day of July 1930, the secretary of state after a full consideration of the sufficiency of said petition mailed to Honorable Howard Wood, chairman of the committee of petitioners the following letter:

"An examination of initiative petitions for the repeal of article 20 of our state constitution relating to prohibition, containing 20,873 signatures, shows same to be defective;

"1. 479 copies containing in excess of 14,800 signatures of the total number of 611 separate copies making up original petition, do not

bear the affidavit for verification of signatures and signer required by chapter 135, Sess. Laws, 1925.

"2. 60 copies with approximately 5,300 signatures of the total number of 611 separate copies comprising original petition, except a few isolated signatures, do not show the date of signing required by chapter 135, Sess. Laws 1925.

"3. The following statements appearing below text of constitutional amendment

"Against Prohibition for Repeal

"For Prohibition against Repeal

"cannot be considered a part of the petition and shown on ballot for the reason that such statement is contrary to section 959, Supp. Comp. Laws 1913 (chapter 133, Sess. Laws 1925). The latter requires ballot to show:

"YES

"NO

"4. 11 copies with 484 signatures cover different subject matter.

"In view of the seriousness of the mentioned defects we can do nothing else than to find the petition in question insufficient to permit submission of the constitutional amendment at the coming general election."

On receipt of the foregoing statement, the committee for petitioners, petitioned this court for a writ of mandamus, directing the secretary of state to file the said petition and to place the measure so initiated upon the ballot and submit the same to the electors at the next general election. The secretary of state answered, setting forth copy of his letter of July 10th to the committee. An examination of the petition offered for filing, shows, that 88 copies with 5,536 signatures were accompanied with affidavits for each copy; 453 copies with 12,644 names were covered by one blanket affidavit sworn to on information and belief, stating that the affiant procured the circulation of the copies of said petition, but did not circulate them himself. Fifty-two copies of the petition with 1,845 names bore no date, and there were 18 copies of a memorial to congress with 734 names.

The petitioners claim that, "The only question before this court is the constitutionality of § 1104A1, Supp. to 1913 Comp. Laws (chap.

135, Sess. Laws 1925) which is claimed to be in violation of § 25, art. 2, and § 202 of article 15 of the constitution." Under § 202 of article 15 amendments to the constitution may be proposed by an initiative petition signed by 20,000 electors and filed with the secretary of state 120 days prior to the election at which they are to be voted for, and any amendment "so proposed shall be submitted to the electors and shall become a part of the Constitution if a majority of the votes cast thereon are affirmative. All provisions of the constitution relating to the submission and adoption of measures by initiative petition and on referendum petition, shall apply to the submission and adoption of amendments to the constitution of the state." Under this section an amendment to the constitution may be submitted or initiated the same as any legislation under the initiative and referendum clause of the constitution. That portion of § 25 of the constitution relating to the initiative and referendum is very comprehensive. It reserves the power to initiate and refer. It states the number of electors who may initiate legislation. It provides that the provision shall contain the full text of the measure; that it shall be filed with the secretary of state submitted by ballot at any state wide election designated by the petition or special election called by the governor, and provides for the canvassing of the vote. It states what vote is necessary, and when the measure shall become a law. It distinguishes between a general and special election. It provides, that no law shall be enacted limiting the number of copies, all copies becoming a part of the original petition when filed or attached. It states what shall be printed upon the ballot and provides for a committee of the petitioners which represents and acts for them. It provides for the publication by the state of all measures, and the mailing of the same to each elector in a publicity pamphlet containing a copy of each measure. It prescribes a form for the enacting clause of all measures, and makes the general election laws of the state applicable thereto.

As counsel for petitioners contend, by the adoption of this section it is apparently intended to place the power in the hands of the people to initiate legislation without unreasonable burdens. This is further shown by the provision, viz.: "This section shall be self-executing and all of its provisions shall be treated as mandatory. Laws may be enacted to facilitate its operation, but no law shall be enacted to hamper,

restrict or impair the exercise of the rights herein reserved to the people."

The law which petitioners claim, violates the foregoing provisions of the constitution is chapter 135, Sess. Laws 1925. It is entitled, "An Act To Safeguard the Initiative, Referendum and Recall Provisions of the Constitution by Prohibiting Illegal and Fraudulent Signatures to Petitions, Prescribing Form and Manner of Signing and Penalties for Violations." This law was no doubt enacted in accordance with the invitation in section 25 of the constitution, viz., "Laws may be enacted to facilitate its operation, but no law shall be enacted to hamper, restrict or impair the exercise of the rights herein reserved· to the people." It is clear then, that if chapter 135, Sess. Laws of 1925, only facilitates the operation of § 25 of the constitution then, it is constitutional. On the other hand, if it hampers, restricts or impairs the exercise of the rights of the people in any way to initiate legislation it is void. It is clear from the title of the act that it is intended to regulate the circulation of petitions for all initiative and referendum legislation to prevent fraud and to enable the secretary of state to pass upon, and determine the sufficiency of the petitions. Section 25 of the constitution confers upon the secretary of state the power to determine the sufficiency of the petition as follows: "The secretary of state shall pass upon each petition, and if he finds it insufficient he shall notify the 'committee for the petitioners' and allow twenty days for correction or amendment. All decisions of the secretary of state in regard to any such petition shall be subject to review by the supreme court." Independent of any statute, the constitution requires the secretary 'of state to exercise some discretion in determining the sufficiency of any petition, which must be reasonable and is subject to review in the supreme court.

Section 1 of the act provides, that, "no person shall sign any initiative, referendum or recall petition . . . unless he is a qualified elector." This provision does not hamper, hinder or restrict in any way, but it facilitates for, as a matter of course, a person who is not a voter should not sign a petition calling for an election. "No person shall sign any such petition more than once." This provision also facilitates by preventing a fraud. "Each signer shall add his residence, post-office address, and date of signing." This is a wise provision in-

tended to facilitate by preventing fraud. In fact, counsel for petitioners concedes that the first four subdivisions of section one of the act are reasonable and not in conflict with any part of the constitution. His claim is, that the vice in the act is in the last subdivision, viz., "Each copy of any such petition before being filed must have attached thereto an affidavit to the effect that each signature to the paper appended is the genuine signature of the person whose name it purports to be, and that each such person is a qualified elector."

"It is a general principle, which is embodied in the maxim *ut res magis valeat quam pereat*, that the court should if reasonably possible, so construe a statute as to give it effect. When an act is equally susceptible of two constructions, one of which will maintain and the other destroy it, the court will always adopt the former. . . . When the constitutionality of a statute is questioned it is the duty of the courts, and also a rule of construction, to adopt such construction as will make the statute constitutional if the language will permit. There is a strong presumption in favor of the validity of an act, and courts should not declare acts unconstitutional unless satisfied beyond a reasonable doubt. Where an act is fairly susceptible of two constructions one of which will uphold the validity of the act while the other will render it unconstitutional, the one which will sustain the constitutionality of the law must be adopted." 25 R. C. L. 999–1001, §§ 242 and 243.

Where a petition requires the signatures of 20,000 electors it is necessarily circulated by copy by many individuals. The legislators must have had this in mind at the time of the passage of chapter 135, Sess. Laws 1925, and they also knew that an affidavit stating in effect that each person who signed the petition was at the time of signing a qualified elector would necessarily be made on information and belief. Every person who circulates a petition can make a positive affidavit that, the signature was the genuine signature of the person who signed it for the reason, that it is signed in his presence, but he cannot swear positively that the signer is a qualified elector. Nobody can testify to that positively, but the signer himself and, of course, the legislature never intended that each individual who signs the petition should make an affidavit. It simply says, that each copy of any such petition before being filed must have attached thereto an affidavit, that is, there must be one affidavit for each copy. In other words, each person who cir-

culates the petition may make the affidavit, not an affidavit for each signer but one affidavit for each copy, and to the effect that the signatures are genuine, and that the signers are qualified electors. Since this affidavit requires information which must necessarily come from others the reasonable common sense construction to place upon the statute, is, that the affidavit may be made on information and belief. "Oftentimes affiant's knowledge of matters stated in his affidavit must of necessity rest upon information derived from others, and where this is the case it is generally sufficient if he aver that such matters are true to the best of his knowledge and belief. Belief is to be considered an absolute term in this connection." 2 C. J. page 355, § 87 and the many cases cited.

"Where a showing by affidavit is required as to facts which are necessarily matters of information and belief, an affidavit on information and belief ought to suffice. The statute should receive a construction in accordance with common sense. It was not intended to require perjury, and, as it requires affidavit to matters involving legal opinion and conclusions of law and fact, it must contemplate that such affidavit will be made upon the only basis on which such opinions and conclusions can be reached." Pound, C., in Leigh v. Green, 64 Neb. 533, 537, 101 Am. St. Rep. 592, 90 N. W. 255 (affirming on rehearing 62 Neb. 344, 89 Am. St. Rep. 751, 86 N. W. 1093, and affirmed in 193 U. S. 79, 48 L. ed. 623, 24 S. Ct. 390, and quoted with approval in Smith v. Collis, 42 Mont. 350, 112 Pac. 1070, Ann. Cas. 1912A, 1158).

"Whenever the statute, either in express terms or by implication, requires a person to make a statement which from the very nature of things can only be made on information and belief, an affidavit in that form meets the demands of the statute. It is impossible for anyone to swear positively that a particular person is a nonresident of this state, or to say that a nonresident resides at a particular place. In requiring these facts to be stated, the statute does not demand the impossible, and certainly does not contemplate that a false statement shall be made." Smith v. Collis, 42 Mont. 350, 112 Pac. 1070, Ann. Cas. 1912A, 1158.

The statutory requirement that, "each copy of any such petition before being filed must have attached thereto an affidavit to the effect

that each signature to the paper appended is the genuine signature of the person whose name it purports to be, and that each such person is a qualified elector," does not hamper, restrict or impair the exercise of the rights reserved to the people by the constitution, if such affidavit is made on information and belief. Any person who circulates a copy of a petition in any neighborhood, or any person who has information upon which he can form a belief can make such an affidavit in compliance with the statute as we construe it, and as so construed, it is a reasonable, constitutional regulation and a valid statute.

It being conceded that the petition does not comply with the statute, the writ must be, and is denied.

BURR, NUESSLE and CHRISTIANSON, JJ., concur.

BIRDZELL, J. (concurring specially). The statute in question says: "Each copy of any such petition before being filed must have attached thereto an affidavit to the effect that each signature to the paper appended is the genuine signature of the person whose name it purports to be, and that each such person is a qualified elector." I agree with the construction which the majority places upon the last clause of the above paragraph; that is, if it would save the constitutionality of the statute to hold that the affidavit that a signer is a qualified elector may be upon information and belief, it should be so held, because the facts upon which that conclusion would rest are necessarily facts of which the affiant could not well have personal knowledge or direct information. However, this does not apply to the requirement that the petition shall have attached an affidavit to the effect that each signature appended to the paper is the genuine signature of the person whose name it purports to be. Obviously, anyone circulating a petition and witnessing the signatures to it would have the necessary information to state positively that each signature attached to the paper is the genuine signature of the person whose name it purports to be. Hence, as I read the statute, there is here a legislative requirement that each person signing a petition must sign in such circumstances as to enable some other person to make a positive affidavit that his signature is genuine and further that he must rely upon such person to make such an affidavit in order that his signature or petition may become effective;

either this, or the signer must himself make an affidavit as to the genuineness of his signature, in addition to stating his residence, his post-office address, and date of signing, which affidavit must be attached to the petition.  In my opinion, such a legislative requirement cannot be said to facilitate the operation of the constitutional provision securing the right to initiate measures, but on the contrary it would seem necessarily to hamper and restrict the exercise of the right.  I agree that an elector when he becomes a petitioner may well be required to furnish reasonable prima facie proof of the lawful exercise of his right, but to require him to exercise it only in the presence of a notary public, or to make its exercise dependent upon the willingness of another to make an affidavit, does not seem to me to be a reasonable, facilitating regulation.

While differing in the respect indicated from the views of the majority, I nevertheless concur in the order denying the writ.  The record here shows that there are barely enough names on the petition if all are counted.  It also shows that the petitions are in such form that the secretary of state might well question their sufficiency upon other than the statutory grounds stated in his letter to the committee.  He might reasonably require proof before accepting some of the names as those of petitioning electors.  The constitution vests in the secretary of state the primary duty of passing upon the sufficiency of such a petition, and his action is rendered subject to judicial review in the supreme court.  State Const. § 25.  In my opinion, in view of the character of the petitions, a writ of mandamus should not be awarded at the instance of the committee for the petitioners without a clear showing that the petition is sufficient or that the secretary of state has adjudged it to be sufficient.  The court should not in the first instance exercise the discretion which the constitution vests in the secretary of state.

I concur in the order denying the writ.