[File No. 5964.]

H. C. SCHUMACHER, H. R. Wood, Allen McManus, Bert Morrison, and J. A. Felver, Petitioners, v. ROBERT J. BYRNE, Respondent.

(237 N. W. 741.)

Opinion filed July 22, 1931.

*Lemke & Weaver* and *Francis Murphy,* for petitioners.

*James Morris,* Attorney General, and *Charles Simon,* Assistant Attorney General, for respondent.

*Lawrence, Murphy, Fuller & Powers,* for intervenors.

BURR, J.   On June 2, 1931 the petitioners delivered to the secretary of state a large number of instruments united to form a general petition as follows:

"REFERENDUM PETITION
A MEASURE
FOR A REFERENDUM OF SENATE BILL NO. 100.
BE IT ENACTED BY THE PEOPLE OF THE STATE OF
NORTH DAKOTA:

That Senate Bill No. 100, 'For an Act to Amend and re-enact Sections 2, 3, and 5 of Chapter 166, Session Laws of North Dakota for the year 1929, and providing for a tax of four cents per gallon upon motor vehicle fuels, and further providing for the distribution of the revenue derived from said tax,' and passed by the 22nd Legislative Assembly at its regular session in 1931, be and the same is hereby repealed and disapproved.

    Yes    [ ]
    No    [ ]

We, the undersigned, consisting of over 7000 of the qualified electors at large, of the State of North Dakota, hereby propose that the above

measure 'For a referendum of Senate Bill No. 100,' be submitted to the qualified electors of the state, for their approval or rejection, and we hereby request the Secretary of State of North Dakota to submit the above measure to the voters of the state at the next presidential primary election to be held on the Third Tuesday in March, 1932.

The ballot title of the measure shall be 'Referendum of Senate Bill No, 100, providing for a tax of four cents per gallon upon motor vehicle fuels and for the distribution of the revenue derived from said tax.' And we name H. C. Schumacher, Fargo, N. Dak., Chairman; H. R. Wood, Fargo, N. Dak., Allen McManus, Grand Forks, N. Dak., Bert Morrison, Robinson, N. Dak., and J. A. Felver, Fargo, N. Dak. who shall constitute the committee for Petitioners and who shall represent and act for petitioners." The petition was signed by approximately nine thousand electors of the state and tendered within the time prescribed by the provisions of § 25 of the state Constitution as amended. The secretary of state received the petition, made an examination of the same and, on June 18, 1931, in accordance with the requirements of said § 25 of the Constitution which says:

"The secretary of state shall pass upon each petition, and if he finds it insufficient he shall notify the 'committee for the petitioners' and allow twenty days for correction or amendment," notified the chairman of the committee as follows:

"Department of State,
Bismarck, North Dakota,
June 18, 1931.
Committee for Petitioners, Referendum S. B. 100,
Fargo, North Dakota.
Attention: Mr. H. C. Schumacher, Chairman.
Dear Sir:

You are hereby notified that the petition for a referendum of S. B. 100, passed by the Twenty-second Legislative Assembly, relating to 4-cent motor vehicle fuel tax and distribution of revenue derived therefrom filed with this office on June 2nd—does not meet the requirements of Article 26, Amendments to N. D. Constitution and Chap. 135, S. L. 1925, and is found insufficient for submission to the voters at the next presidential primary to be held on the third Tuesday in March 1932.

A careful check of the various separate copies making up this petition shows same to have been signed by 9277 petitioners. In 2975 cases, however, it appears very clearly that the signer himself did not add the date of signing, his residence and post office address and that this information was entered in the handwriting of some person other than the signer. Deducting this amount of 2975 from 9277, the total number of signatures, leaves 6302 satisfactory and acceptable signatures, or 698 less than 7000, the number required by Article 26, Amendments to our Constitution. In this connection we wish to state for your information that in arriving at the number of defective signatures (2975) proper credit has been given for 964 instances in which the signer himself did originally enter ditto marks in place of date and residence, according to your own personal statement of a week ago. But for this the number of defective signatures would have been 3939, making a total of acceptable signatures 5338 or 1662 below the required amount.

Although somewhat contradictory and conflicting in meaning no objection is made to the wording of the petition itself as this, in our opinion, is sufficiently expressive of the intention of the petitioners to effect a referendum of S. B. 100 passed by the Twenty-second Legislative Assembly of our state.

Very truly yours,<br>
Robert Byrne,<br>
Secretary of State."

The petitioners immediately applied to this court for a review of this decision of the secretary of state and for an order reversing the decision and requiring the secretary to file the petition in accordance with the provisions of the Constitution of this state and to place the same upon the ballot as required by law.

Upon this Walter R. Reed, John C. Hart, and Mrs. Walter C. Taylor applied to this court for leave to intervene, claiming to be electors and taxpayers of the state and beneficially interested in the result of these proceedings. This application was accompanied by a proposed "answer to petition for review and cross-petition for review" wherein these taxpayers allege not only that the secretary of state was

justified in rejecting the petition on the grounds set forth in his notice to the "committee for the petitioners" but also allege that the "purported referendum petition does not contain or have annexed thereto the signatures of seven thousand electors of the state;" that the purported referendum petition is not a referendum petition but is in form and substance "an initiative petition for the enactment by the people of the state of North Dakota of a measure for the repeal of said Senate Bill No. 100," and is void because it lacks the signatures of ten thousand electors; that said petition "does not contain and set forth a ballot title fairly representing the subject-matter of the measure sought to be referred," in this that it fails to disclose that "the measure sought to be referred is in fact an amendment of §§ 2, 3 and 5 of chapter 166 of the Session Laws of the state of North Dakota for the year 1929;" that it fails to disclose and set forth "the nature and significance of the material and important changes and amendments thereto accomplished by the said Senate Bill No. 100;" and fails to disclose and set forth whether the proposed tax of four cents per gallon is a mere increase of the tax of three cents already provided for or whether it is an additional and independent tax and that the proposed ballot title does not fully and fairly include and set forth the question to be voted upon.

The measure involved is denominated Senate Bill No. 100, as the Session Laws of 1931 had not been published when the petition was circulated, and therefore the law could not be described otherwise— the time intervening being insufficient to permit the secretary of state to have the laws compiled and published. However after the tender of petition the "Popular Edition of the Session Laws of 1931" was issued and Senate Bill No. 100 is designated therein as chapter 185.

This law was approved March 11, 1931, and carries no emergency clause. Hence the law would ordinarily go into effect July 1st. It thus became imperative to have the application for review heard promptly and the hearing was set for the 30th of June, 1931.

Upon the return day the secretary of state filed his answer and return admitting the tender of the petition and his rejection thereof in accordance with the statements made in the letter of notification, and in addition thereto he sets forth further reasons in harmony with the allegations made by the taxpayers seeking to intervene.

The taxpayers seeking to intervene were heard by the court as ·if their application was granted, without deciding their right so to do; but this action of this court in no way determines the right of independent parties to intervene in a review of the decision of the Secretary of State to reject a petition for referendum of a law.

Argument was had on the date set, and in order to prevent possible complications arising from uncertainty as to a referendum this court, on the following day, announced a per curiam decision as follows:

## "IN THE SUPREME COURT
## STATE OF NORTH DAKOTA

H. C. Schumacher, H. R. Wood, Allen McManus, Bert Morrison and J. A. Felver, Petitioners, v. Robert J. Byrne, Secretary of State, Respondent.

Per Curiam:

The court, having heard the arguments of the respective parties to this proceeding and the argument presented in behalf of certain taxpayers who seek permission to intervene therein; and due consideration having been given to the various questions presented for determination, and it appearing to the satisfaction of the court that the referendum petitions are not rendered insufficient by the defects claimed to exist therein, and that the decision of the secretary of state holding such petitions to be insufficient, is incorrect, it is therefore ordered that the secretary of state be and he thereby is required to accept and file said petitions conformably to law.

A formal opinion will be prepared and filed hereafter."

In accordance with the provisions of § 101 of the Constitution which says:

". . . every point fairly arising upon the record of the case shall be considered and decided, and the reasons therefor shall be concisely stated in writing, . . ."
this opinion was prepared at a later date.

Section 25 of the Constitution, as amended, makes provision for the exercise of the reserved power of referendum, and provides that: "Seven thousand electors at large may, by referendum petition, suspend

the operation of any measure enacted by the legislature, except an emergency measure." "Each measure . . . referred to the electors, shall be submitted by its ballot title, which shall be placed upon the ballot by the secretary of state. . . ." "The secretary of state shall pass upon each petition, and if he finds it insufficient he shall notify the 'committee for the petitioners' and allow twenty days for correction or amendment. All decisions of the secretary of state in regard to any such petition shall be subject to review by the Supreme Court. . . . If proceedings are brought against any petition upon any ground, the burden of proof shall be upon the party attacking it." "Each petition shall have printed thereon a ballot title which shall fairly represent the subject matter of the measure. . . ." "All measures submitted to the electors shall be published by the state as follows: 'The secretary of state shall cause to be printed and mailed to each elector a publicity pamphlet, containing a copy of each measure together with its ballot title to be submitted at any election.'" "In submitting measures to the electors, the secretary of state and all other officials shall be guided by the election laws until additional legislation shall be provided." "This section shall be self-executing and all of its provisions shall be treated as mandatory. Laws may be enacted to facilitate its operation, but no law shall be enacted to hamper, restrict or impair the exercise of the rights herein reserved to the people."

This same section makes provision for the exercise of the reserve power of the initiative and provides that "The enacting clause of all measures initiated by the electors, shall be: 'Be it enacted by the people of the state of North Dakota.'" The Constitution does not provide a form for a referendum petition, nor state what such petition shall contain except as it provides for a ballot title, nor does it specify any particular act on the part of electors except that they "may by referendum petition suspend the operation" of the measure attacked.

A petition is "a formal written request addressed to an official having power to grant it." (Webster.) To petition requires signatures; but the Constitution makes no requirements on the part of the electors other than to state what is desired and to sign the statement.

We have no statute providing a form for a referendum petition, and it is clear that while said § 25 of the Constitution implies clearly that

the legislature may provide such legislation as may be required, yet the laws enacted must be such as will facilitate the operation of this reserve power of referendum and cannot be permitted to hamper or restrict or impair the exercise thereof.

In 1925 the legislature enacted chapter 135, being §§ 1104a1 and 1104a2 of the Supp. as follows:

"1. No person shall sign any initiative, referendum or recall petition circulated pursuant to the provisions of Articles 26, 28 or 33 of the Constitution, unless he is a qualified elector.

No person shall sign any such petition more than once.

Each signer shall add his residence, post-office address, and date of signing.

Each copy of any such petition before being filed must have attached thereto an affidavit to the effect that each signature to the paper appended is the genuine signature of the person whose name it purports to be, and that each such person is a qualified elector.

2. Penalty. Any person convicted of violating any provision of this act shall be deemed to be guilty of a misdemeanor."

In the case of Wood v. Byrne, 60 N. D. 1, 232 N. W. 303, this court considered the nature and character of said chapter 135 of the Session Laws of 1925 and held that such law was "intended to regulate and facilitate the circulation of initiative, referendum, or recall petitions, so as to aid the secretary of state, in the exercise of the power granted to him by the Constitution itself, to pass upon and determine the sufficiency of such petition before filing the same, and must be liberally construed so as to effect its purpose." In other words in construing this law we must interpret it so that it will facilitate the exercise of the power, otherwise it will be contrary to the provisions of the Constitution.

The referendum petition is attacked as being in the form of an initiative petition because it says, "Be it enacted by the people of the state of North Dakota." It is true that the provision for the use of the sentence quoted is used in connection with initiated measures and that nowhere in the Constitution is there a requirement for such provision in a referendum petition; but even though contained in the referendum petition it does not necessarily invalidate the petition. As pointed out there is no prescribed form; but no one can read the pe-

tition without understanding and knowing that it is a petition to refer to the electorate a law passed by the legislature. The petition itself specifically describes the law attacked and sets it forth according to the title of the act. The petition is denominated a "Referendum Petition" and is described as "a measure for a referendum of Senate Bill No. 100." The proposed ballot title specified in the petition, says "Referendum of Senate Bill No. 100."

The secretary of state specifically describes it as "the petition for a referendum of S. B. 100, passed by the Twenty-second Legislative Assembly." He specifically states that in his opinion the wording "is sufficiently expressive of the intention of the petitioners to effect a referendum of S. B. 100."

The petitioners themselves could not have been misled. Besides the presumption that they knew what they wanted and that they had no intent to mislead others, a cursory reading of the body of the petition shows its purpose, even if it could have been better expressed. It cannot be contended that they might reasonably assume that this was a petition to initiate a law, and that they so intended it.

Some objection is made to the form prescribed for the "ballot title" and it is claimed that the same is indefinite and misleading, that it does not fairly represent the subject-matter of the measure, that it does not apprise the voters that the measure attacked is an amendment to a prior law, and that it does not apprise the voters that the four cent tax attacked is not in fact an additional tax of four cents but is a mere additional tax of one cent. There are other objections which we need not consider.

The section of the Constitution providing for the exercise of the power of referendum requires a petition to have "printed thereon a ballot title which shall fairly represent the subject-matter of the measure," and also prescribes that while such referred measure is to be submitted by a "ballot title," this "ballot title" shall be placed upon the ballot by the secretary of state.

Distinction must be made between the "ballot title" and the statement of the question to be voted upon. The proposed "ballot title" is not misleading. It does not purport to be a statement of the question —it is merely the title. It is possible it could be improved. It may not be labelled the way others may label it; but the only way it could

have been stated at the time the petition was circulated was as "Senate Bill No. 100," and in addition, to prevent any misunderstanding it stated this bill provided for the tax of four cents per gallon. The "ballot title" as proposed does "fairly represent the subject-matter of the measure."

Strenuous objection is made to the form of the "ballot title," as if this constitutes the manner in which the electors will be apprised of the contents of the law referred. It is said the matter is juggled so as to mislead, and the proper manner is to say "Shall Senate Bill No. 100 being Chap. etc., be approved"—followed by "yes" and "no" as indicated.

The law in force today requires that "a constitutional amendment, initiated or referred measure, or other question shall be stated fully and fairly on such ballot, and the words 'yes' and 'no' shall be printed on the ballot at the close of the statement of the question, etc." Section 959 of the Supp. Section 979 of the Comp. Laws requires the secretary of state to certify to the county auditor of each county any "proposed constitutional amendment or other question" to be submitted "to the people of the state for popular vote." Clearly then, the secretary of state has the duty of seeing that a constitutional amendment, or an initiated or a referred measure is fully and fairly stated on the ballot, as well as having the "ballot title" printed. This is the means adopted to remove temptation to deceive, and to obtain uniformity of issue throughout the state. It is his duty to so state the question that the electorate may vote "yes" if it desires to approve the act of the legislature, or "no" if it disapproves it.

It will be noted however that the petition was not rejected on this ground, and that we consider the same merely because it has been suggested by the return of the secretary of state wherein he gives additional reasons for rejection in harmony with the objections raised by those seeking to intervene. So far as the objection to the form of the petition and the number and genuineness of the signatures is concerned the petition is valid.

The secretary of state found that the residence and postoffice address and day of signing of hundreds of petitioners were not written by each of such petitioners themselves. It is conceded that this finding is made by the secretary upon the examination of the petition itself and there

is no intimation to the effect that any extrinsic evidence was offered. The secretary does not contend the signatures are not genuine, nor that there is not a sufficient number of required signatures. It is true those desiring to intervene filed a cross-petition wherein they attack the petition; but the Constitution says that where the proceedings are brought against any petition upon any ground, the burden of proof shall be upon the party attacking it and no proof whatever is offered by anyone to show that the signatures are not genuine, that each signature was not written by the petitioner himself, or that the petition is not signed by seven thousand electors of the state. This is a proceeding to review the finding of the secretary on this matter—the sole matter upon which he rejected the petition. This proceeding is an attack upon the act of the secretary and it is contended that therefore the finding of the secretary to the effect that these petitioners did not themselves write in their own residence and postoffice address, nor themselves date their signatures comes before us clothed with the presumption of being correct.

The Constitution does not prescribe the procedure for the secretary of state to follow when a petition is presented to him. "If he finds it insufficient" it is his duty to so notify the committee for the petitioners. What he shall do in examining the petition or how he shall determine its sufficiency is not specified. Clearly, however, it places upon him the duty of determining, in the first place, whether the petition conforms to whatever is required by the Constitution and the laws of the state.

But we need not determine whether there is such a presumption. Manifestly the act of the secretary was governed by the provision of § 1104a1 of the Supp. being chapter 135 of the Session Laws of 1925, already quoted. It is not contended that in case the signer did not himself write "his residence, postoffice address, and date of signing" he did not authorize and direct the circulator of the petition or some other person to do the writing for him. The Constitution does not require the petitioner to "add his residence, postoffice address and date of signing." This is a statutory provision, and the statute does not say that the signers shall "add the same in his own handwriting." The Constitution by making provision for a petition makes provision for the petitioner signing the same. The statute presumes he signs

it himself, and provides a penalty for signing the petition more than once. Not only this, but the statute requires the affidavit to show that the signature "is the genuine signature of the person whose name it purports to be." It does not require that the written "residence, post-office address, and date of signing" shall be the personal writing of the one whose name it purports to be. This does not permit the circulator or anyone else, of his own volition, to write in the residence, post-office address, or date of the signing; but it does not preclude the signer specifically directing anyone to write the residence and postoffice address. We must remember the statute cannot be permitted to hamper or hinder the petitioner, that the purpose of the statute is to facilitate the exercise of the power reserved. As we pointed out in Wood v. Byrne, 60 N. D. 1, 232 N. W. 303, supra, this statute is construed to facilitate the exercise of the power by extending aid to the secretary of state in his examination so as to prevent fraud upon the public; but there can be no possibility of fraud where the residence and post-office address and date of signing are given correctly. There is no contention whatever that the residence and postoffice addresses and dates of signing objected to are not correct; and if they be correct then they furnish to the secretary of state the very data contemplated by the statute to prevent fraud.

It is true that where electors seek, by referendum provision, to suspend the operation of a legislative act they are attempting to suspend the will of the people as expressed by its agent, the legislative assembly, and therefore there must be a strict compliance "with the mandatory constitutional provisions under which a referendum is authorized." State ex rel. Baker v. Hanna, 31 N. D. 570, 154 N. W. 704. The constitutional provision dealing with the referendum contemplates this, for it says "all of its provisions shall be treated as mandatory" and thus the petitioners are required to comply with the provisions as well as the secretary of state. In this case however nine thousand electors, far more than the required number, did file with the secretary of state, a referendum petition within the time required by Constitution. They specified the enacted measure they desired to have referred and described it by the title given to it by the legislature—quoting the title in full. They numbered it in accordance with the number of the senate file and the number by which it is known in the published

volume of the session laws. They printed on each copy of the petition a sufficient ballot title and listed the names of at least five electors who were to be the "committee for the petitioners" and who were to "represent and act for the petitioners." The correct date of the signing and the correct residence and postoffice address of each signer is given and each copy of the petition has attached to it the affidavit required by legislative enactment. The law does not require every "i" to be dotted, and every "t" to be crossed and every abbreviation to be followed by a period in order to constitute a strict compliance with the mandatory provisions of the Constitution. The Constitution does not require the residence, postoffice address and date of signing, to be given; nor is there any constitutional provision to the effect that statutory provisions, enacted for the purpose of facilitating the use of the reserved power of referendum, shall be construed strictly against the petitioners. It is sufficient if there is such compliance with the statute as effectuates its purpose of assisting in the prevention of fraud.

It is strenuously contended that the rule laid down by the supreme court of South Dakota in the case of Morford v. Pyle, 53 S. D. 356, 220 N. W. 907, is applicable in this case. Here the supreme court of South Dakota held that "the insertion of signer's residence, business, postoffice address, date of signing, and verification by person circulating petition for referendum, are equally as important as names of signers themselves," and that the indication of residence, business address, etc., by "ditto marks, does not excuse signer from inserting ditto marks himself" nor excuse him from writing in the date of signing. An examination of this case however shows the supreme court of South Dakota had under consideration the provisions of a statute which was necessary to carry the constitutional provision into effect. The constitutional provision in South Dakota is not self-executing as ours is, and the legislature made certain regulations whereby the signer could show his residence and business and postoffice address by ditto marks, but the date of signing had to be in his own handwriting. This statute made it as much obligatory upon him to write in the date as it did to write his name. The language of the statute indicated that the signer was the only one who could insert the ditto marks for his residence, and postoffice address, but that he could do this in lieu of the labor of writing it out. However he was required to write out

the date of signing. We are construing a statute whose only justification is to "facilitate" the constitutional provision, and we hold that the object of statute is accomplished when the signer himself writes in his residence, postoffice address, and date of signing, or personally authorizes the same to be done at the time of signing so that the adding of his residence and postoffice address is all part of his act in signing the petition. Therefore as directed by the per curiam order heretofore made the secretary of state is required to accept and file the said petitions conformably to law.

CHRISTIANSON, Ch. J., and NUESSLE, BIRDZELL, and BURKE, JJ., concur.