[File No. 6548.]

JACOB J. SCHMIDT and Fred Bentz, Jr., for Themselves and on Behalf of All Other Taxpayers and Citizens of the State of North Dakota Similarly Situated, Plaintiffs, v. JAMES D. GRONNA, Secretary of State, G. A. Gilbertson, Deputy Secretary of State, Knight Printing Company, a Corporation, Bismarck Tribune Company, a Corporation, Globe Gazette Company, a Corporation, and the Harvey Herald Company, a Corporation, Defendants.

(281 N. W. 57.)

Opinion filed July 29, 1938.

*J. K. Murray,* for plaintiffs Jacob J. Schmidt and Fred Bentz, Jr.

*Carroll E. Day,* for defendants James D. Gronna and G. A. Gilbertson.

*Alvin C. Strutz,* Attorney General, for State of North Dakota. *H. C. Young* and *C. L. Foster,* amici curiæ.

Nuessle, J.   Plaintiffs brought this action in the district court of Burleigh county to enjoin the secretary of state from having placed upon the official ballot to be used at the primary election in 1938 numbers identifying the proposed initiated and referred laws and constitutional amendments to be voted on at such election.   They also asked for an injunction pendente lite.   The defendant G. A. Gilbertson is the deputy secretary of state, and the remaining defendants are printing establishments engaged to print the ballots.   The defendants, the secretary of state and the deputy secretary of state, interposed a general demurrer to the complaint.   No appearance was made by the other defendants.   When the case was called for hearing in the district court, the attorney general of the state of North Dakota appeared and filed his petition alleging that as attorney general he had rendered an opinion to the county auditors to the effect that numbers identifying the initiated and referred laws and constitutional amendments could not be placed upon the ballot; that the state was vitally interested in the questions presented by the litigation and in having them immediately determined; that he approved of the bringing of the action, joined in the same, and prayed that it at once be disposed of.   The trial court, after hearing, denied the application for a temporary injunction but overruled the defendants' demurrer.   Thereupon the plaintiffs appealed from the order denying the injunctive relief and the demurring defendants appealed from the order overruling their demurrer to the complaint.   These appeals were presented and heard at the same time.   The matter being urgent this court, after consideration and without opinion, held, for the reasons now set forth herein, that in preparing the official ballot containing the proposed initiated and referred laws and constitutional amendments, only such matters may be placed upon the ballot as the constitution and statutes

provide shall be placed thereon, and that the identification numbers proposed to be placed upon the ballot by the secretary of state were not within the contemplation of the constitution and statutes.

Section 25 of the Constitution of the state of North Dakota, as amended, hereinafter referred to as § 25, reserves to the people the initiative and the referendum. It makes provision for the exercise of these powers by submission of measures to the electors of the state upon the filing of petitions in that behalf with the secretary of state. Among other things § 25 provides:

"Each measure initiated by or referred to the electors, shall be submitted by its ballot title, which shall be placed upon the ballot by the secretary of state and shall be voted upon at any state-wide election designated in the petition, or at any special election called by the governor. The result of the vote upon any measure shall be canvassed and declared by the board of canvassers.

. . . . . . . . . . . .

"The secretary of state shall pass upon each petition, and if he finds it insufficient he shall notify the 'committee for the petitioners' and allow twenty days for correction or amendment. All decisions of the secretary of state in regard to any such petition shall be subject to review by the supreme court. But if the sufficiency of such petition is being reviewed at the time the ballot is prepared, the secretary of state shall place the measure on the ballot and no subsequent decision shall invalidate such measure if it is at such election approved by a majority of the votes cast thereon. If proceedings are brought against any petition upon any ground, the burden of proof shall be upon the party attacking it.

. . . . . . . . . . . .

"Each petition shall have printed thereon a ballot title which shall fairly represent the subject matter of the measure, and the names of at least five electors who shall constitute the 'committee for the petitioners' and who shall represent and act for the petitioners.

"All measures submitted to the electors shall be published by the state as follows: 'The secretary of state shall cause to be printed and mailed to each elector a publicity pamphlet, containing a copy of each measure together with its ballot title to be submitted at any election. Any citizen, or the officers of any organization may submit

to the secretary of state, for publication in such pamphlet, arguments concerning any measure therein upon first subscribing their names and addresses thereto and paying the fee therefor, which, until otherwise fixed by the legislature, shall be the sum of two hundred dollars per page.'

"The enacting clause of all measures initiated by the electors, shall be: 'Be it enacted by the people of the state of North Dakota.' In submitting measures to the electors, the secretary of state and all other officials shall be guided by the election laws until additional legislation shall be provided.

.    .    .    .    .    .    .    .    .    .    .    .    .

"The word 'measure' as used herein shall include any law or amendment thereto, resolution, legislative proposal or enactment of any character.

.    .    .    .    .    .    .    .    .    .    .    .    .

"This section shall be self-executing and all of its provisions shall be treated as mandatory. Laws may be enacted to facilitate its operation, but no law shall be enacted to hamper, restrict or impair the exercise of the rights herein reserved to the people."

Section 202 of the Constitution, as amended, provides: " . . . All provisions of the Constitution relating to the submission and adoption of measures by initiative petition and on referendum petition, shall apply to the submission and adoption of amendments to the Constitution of the state."

Section 957, Comp. Laws 1913, provides that: "The printing of ballots and cards of instruction for the electors in each county and the delivery of the same to the election officers as hereinafter provided, shall be a county charge. . . ." Section 964, Comp. Laws 1913, provides that the county auditor of each county shall provide for and distribute to each election precinct in his county two ballots for each vote cast in such precinct at the last general election. Section 959, 1925 Supplement, Compiled Laws 1913, prescribes the kind and quality of the paper and ink to be used in the preparation of the ballots and the form and content of the same, and further provides:

"Constitutional amendments duly certified to the auditor by the secretary of state or any question to be voted for aside from the elec-

tion of public officers, shall be printed on a separate ballot and shall be deposited in a box separate from that provided to receive the ballots of public officers.

"A constitutional amendment, initiated or referred measure, or other question shall be stated fully and fairly on such ballot, and the words, 'yes' and 'no' shall be printed on the ballot at the close of the statement of the question in separate lines with a square formed of black lines after each in which the voter may indicate by cross or other mark how he desires to vote on the question. Where two or more amendments or questions are to be voted on they shall be printed on the same ballot."

Section 979, Comp. Laws 1913, provides that "Whenever a proposed constitutional amendment or other question is to be submitted to the people of the state for popular vote the secretary of state shall, not less than thirty days before election, certify the same to the auditor of each county in the state. . . ." Section 927a1 of the Supplement provides that the secretary of state shall cause the publicity pamphlet to be printed and distributed when there shall be submitted to the electors of the state an initiated or referended law, or proposed amendment to the Constitution. Section 980, Comp. Laws 1913, provides: "Whenever it shall appear by affidavit that an error or omission has occurred in the publication of the names of the persons nominated or in the printing of the ballots the judge of the district court may upon application of an elector make an order requiring the auditor to show cause why such error should not be corrected and upon the hearing thereof he may make such order as the facts warrant."

In the instant case it appears that the secretary of state proposed that each of the constitutional amendments and initiated and referred measures should be identified on the ballot and in the publicity pamphlet by printing in large black type at the upper left-hand corner of each amendment and measure, as the same was placed on the ballot and in the publicity pamphlet, the word "measure" and a number, thus: "MEASURE NO. 1", and also printing the identifying words and number at the end of each amendment and measure on the ballot. The number proposed to be given to each such measure and amendment was to be determined by the order in which measures and amendments were filed in the secretary of state's office, the first filed being

given the number one, the second number two, and so on in the order of their filing. This action was begun by the plaintiffs to enjoin the secretary of state and certain printing establishments from causing the ballots to be printed and from printing the same in the foregoing manner.

Plaintiffs in support of their appeal contend that the secretary of state is a ministerial officer; that his duties with respect to the printing of the ballot and the matter that shall be placed thereon are fixed and determined by the constitutional provisions and statutes in such case made and provided, and that under these provisions and statutes he has no discretion which permits him to place identifying words and numbers upon the ballot or cause the same to be done. On the other hand, the defendants contend that the plaintiffs are applying for equitable relief and that the .court has no jurisdiction to grant such relief in a matter which is purely political; that, in any event, the constitution and the statutes repose in the secretary of state discretionary power with respect to the printing of the ballot, and that in causing the proposed numbers to be placed thereon the secretary is acting within his discretion.

It seems to us that the question as to the power of the court to assume jurisdiction and grant the relief for which the plaintiffs pray is foreclosed by the previous decisions of this court. See State ex rel. Linde v. Hall, 35 N. D. 34, 159 N. W. 281, and cases cited in the opinions therein. In that case we held as stated in the second paragraph of the syllabus: "In filing such a petition for, and in submitting to a vote, a proposition to amend the Constitution by initiative petition the secretary of state is not a legislative agent, and performs only ministerial duties reviewable in judicial proceedings." See also State ex rel. Laird v. Hall, 49 N. D. 11, 186 N. W. 284; Wood v. Byrne, 60 N. D. 1, 232 N. W. 303; Preckel v. Byrne, 62 N. D. 634, 244 N. W. 781, and cases cited. In this connection it is to be noted that while the instant case was begun by the named plaintiffs as private individuals in their own behalf and on behalf of the taxpayers of the state, thereafter and before the trial the attorney general appeared in his official capacity and on behalf of the state and prayed that the court assume jurisdiction and determine the issues raised therein as the same were of vital interest to the people of the state and should be

determined immediately, which petition was granted by the trial court and thenceforth the case was treated in all respects as though the same had been brought in the first instance by the state on the relation of the attorney general.

Our inquiry then is narrowed to a consideration of the constitutional and statutory provisions prescribing the powers and duties of the secretary of state in the submission of measures to the electorate. We have heretofore quoted or referred to those that are pertinent. The fourth paragraph of § 25 of the constitution, as amended, requires that each measure initiated by or referred to the electors shall be submitted by its ballot title which shall be placed upon the ballot by the secretary of state. And the seventh paragraph provides that "if the sufficiency of such petition is being reviewed (by the court on appeal from the decision of the secretary of state) at the time the ballot is prepared, the secretary of state shall place the measure on the ballot. . . ." All else with respect to the preparation of the ballot, its form and content, is left to be prescribed by the legislature. In this regard, § 25 provides: "In submitting measures to the electors, the secretary of state and all other officials shall be guided by the election laws until additional legislation shall be provided." And further, "This section shall be self-executing and all of its provisions shall be treated as mandatory. Laws may be enacted to facilitate its operation, but no law shall be enacted to hamper, restrict or impair the exercise of the rights herein reserved to the people." Consistent with these constitutional provisions the statute requires the county auditors of the several counties to prepare and provide the ballots. It further provides that proposed constitutional amendments, or other questions to be submitted to the people for popular vote, shall be certified by the secretary of state to the auditors of the several counties. And § 959, Supplement, quoted supra, prescribes the form of the ballot and provides that constitutional amendments and initiated or referred measures shall be stated fully and fairly thereon. The defendants say that pursuant to this latter provision the secretary of state is charged with the duty of fully and fairly preparing the ballot. But this contention misconceives the statute. The secretary's duty goes no further than to see that such measures are "fully and fairly stated" on the ballot. And the printing of numbers designating the measures does not contribute to the full and fair statement of such

measures. The statute further provides that the words "yes" and "no" shall be printed on the ballot at the close of the statement of the question in separate lines with a square formed of black lines after each in which the voter may indicate by cross or other mark how he desires to vote on the question. This statutory direction is clear and definite and leaves nothing to the discretion of either the secretary of state or of the county auditors as to whether anything in addition shall be printed thereon. In Schumacher v. Byrne, 61 N. D. 220, 237 N. W. 741, we said in this regard: "The law in force today requires that 'a constitutional amendment, initiated or referred measure, or other question shall be stated fully and fairly on such ballot, and the words "yes" and "no" shall be printed on the ballot at the close of the statement of the question, etc.' Section 959 of the Supp. Section 979 of the Comp. Laws requires the secretary of state to certify to the county auditor of each county any 'proposed constitutional amendment or other question' to be submitted 'to the people of the state for popular vote.' Clearly then, the secretary of state has the duty of seeing that a constitutional amendment, or an initiated or a referred measure is fully and fairly stated on the ballot, as well as having the 'ballot title' printed. This is the means adopted to remove temptation to deceive, and to obtain uniformity of issue throughout the state. It is his duty to so state the question that the electorate may vote 'yes' if it desires to approve the act of the legislature, or 'no' if it disapproves it."

The defendants contend that the proposed numbering will enable the voters to become better informed and facilitate intelligent voting, especially in the instant case, where the measures in question are numerous, long, and involved, and the time allotted for voting brief; that it will simplify the counting of the votes and generally be beneficial in carrying out the election laws; that, on these accounts, the secretary in the exercise of his discretion may properly number the measures. It is a sufficient answer to this contention to say that § 25 also speaks with respect to the matter of informing the voters as to the measures that are to be placed on the ballot. In that behalf, the tenth paragraph thereof, commands that "The secretary of state shall cause to be printed and mailed to each elector a publicity pamphlet, containing a copy of each measure together with its ballot title to be submitted at any elec-

tion. Any citizen, or the officers of any organization may submit to the secretary of state, for publication in such pamphlet, arguments concerning any measure therein upon first subscribing their names and addresses thereto and paying therefor . . . ." Pursuant to this mandate the legislature enacted § 927a1, 1925 Supplement, which provides for the printing and distribution of the publicity pamphlet by the secretary of state when "an initiated or referended law, or proposed amendment to the Constitution" shall be submitted to the electors. Here, also, nothing is left to the discretion of the secretary beyond the carrying out of the constitutional mandate.

It is further urged that in various of the states a system of numbering measures, similar to that proposed by the secretary of state, is in vogue. Be this as it may, such practice in other states can have no weight as a precedent in the instant case. Oregon is one of the states where a system of numbering measures is in effect. But this is pursuant to statutory direction. Oregon Code Anno. Official ed. 1930, §§ 36–2006, et seq. And it is most significant that while our constitutional provisions reserving the initiative and referendum to the people were taken from Oregon (see State ex rel. Linde v. Hall, 35 N. D. 34, 159 N. W. 281, supra) yet neither in these provisions nor in the statutes enacted after their adoption, is there so much as a suggestion that measures placed upon the ballot shall be numbered, although the Oregon law providing for numbering such measures was in force when our constitutional provisions were adopted.

The order overruling the demurrer to the complaint is affirmed.

CHRISTIANSON, Ch. J., and SATHRE, MORRIS and BURR, JJ., concur.