STANLEY G. QUIGLEY, APPELLANT, V. PHYLLIS LEBSACK, RED WILLOW COUNTY CLERK AND ELECTION COMMISSIONER, ET AL., APPELLEES.

362 N.W.2d 31

Filed February 1, 1985.   No. 83-504.

John J. Battershell of Cunningham, Battershell & Bergin, P.C., for appellant.

Mike Freeman, Red Willow County Attorney, for appellees.

Vernon Tweedie, for amicus curiae Committee of Concerned Users of R.E.A.

KRIVOSHA, C.J., BOSLAUGH, WHITE, HASTINGS, CAPORALE, SHANAHAN, and GRANT, JJ.

SHANAHAN, J.

Stanley G. Quigley appeals the dismissal of his action in the district court for Red Willow County, namely, Quigley's suit to enjoin a recall election.

Quigley, director of the McCook Public Power District, subdivision No. 3, filed a petition seeking to enjoin Phyllis Lebsack, county clerk and election commissioner of Red Willow County, and the Red Willow County commissioners from holding a recall election to relieve Quigley of his directorship. To achieve the recall election, the recall petition required signatures of 139 registered voters. Lebsack determined that there were 160 valid signatures on the recall petitions and found the petitions sufficient for the recall election. At a hearing before the district court the uncontradicted evidence disclosed that 49 of the 160 signatories did not personally indicate their residence addresses on the recall petitions. Rather, based on information contained in the county's voter registration lists and without request from the petitioning signatory, either the circulators of the recall petitions or spouses of the circulators inserted the 49 signatories' addresses on the petitions previously signed. There was no evidence offered to show that the signatories in question resided or had any actual address in subdivision No. 3 of McCook Public Power District.

At the time the petitions were circulated, Neb. Rev. Stat. § 32-102 (Reissue 1978) provided:

> Elector shall mean every person of the constitutionally prescribed age or upwards, and who shall have the right to vote for all officers to be elected to public office, and upon all questions and propositions lawfully submitted to the voters at any and all elections authorized or provided for by the Constitution or laws of the State of Nebraska; *Provided*, no person shall be qualified to vote at any election unless such person shall be a resident of the state, county, precinct, township, or ward on or before election day, and shall have been properly registered with the county clerk or election commissioner, and shall be a citizen of the United States.

Regarding a recall petition, Neb. Rev. Stat. § 23-2010.02

(Cum. Supp. 1982) in part provides: "Each signer of a recall petition shall sign his or her name in ink or indelible pencil and shall place thereon after his or her name his or her place of residence by street and number." Neb. Rev. Stat. § 23-2010.08 (Cum. Supp. 1982) provides:

Should a majority of the votes cast thereon at a recall election be against the removal of the officer named on the ballot, such officer shall continue in office for the remainder of his or her term, subject to recall as before. If a majority of the votes cast thereon, at a recall election, shall be for the removal of the officer named on the ballot, he or she shall, regardless of any technical defects in the recall petition, be deemed removed from office.

The district court refused to enjoin the recall election involving Quigley. The election was held and Quigley was recalled.

Quigley contends that an injunction should have been issued because 49 of the signatories did not personally place their residence addresses on the recall petitions. Lebsack claims that the statutory provision for inclusion of the signatory's residence address is "merely informational in nature to assist the county clerk in her verification of signatures." Brief for Appellees at 2. Hence, according to Lebsack, any failure to comply with the statute is a technical deficiency only.

A recall statute, or any other kind of election statute, must be liberally construed to effectuate the purpose for which the statute is intended. *Shaw v. Stewart*, 115 Neb. 315, 212 N.W. 760 (1927). See, also, *Stone et al. v. Wyckoff, et al.*, 102 N.J. Super. 26, 245 A.2d 215 (1968); *In re Petition for Removal of Rice*, 35 Ill. App. 2d 79, 181 N.E.2d 742 (1962); *Whitman v. Moore*, 59 Ariz. 211, 125 P.2d 445 (1942); *Schumacher v. Byrne*, 61 N.D. 220, 237 N.W. 741 (1931). However, liberal construction of statutes governing recall of public, elected officials does not constitute a license to totally ignore the express requirements of recall statutes. *State ex rel. Palmer v. Hart*, ____ Mont. ____, 655 P.2d 965 (1982); *Hazelwood v. Saul*, 619 P.2d 499 (Colo. 1980).

Section 32-102 expresses and impresses the importance and necessity of residence in reference to the electoral process in

Nebraska. Indication of residence address specified in § 23-2010.02 impliedly assures that only registered voters will participate in the political process envisioned in removal of an elected official by recall. See *Cleland v. District Court*, 92 Nev. 454, 552 P.2d 488 (1976). The obvious purpose for requiring the address of a signatory is to supply a convenient method of checking whether a signatory is ostensibly a qualified elector. *Whitman v. Moore, supra*. Additionally, another aim of the statute requiring a signatory's actual address is to enable a protestant to trace the signatory for the purpose of determining qualification to sign the petition. *In re Referendum Petition No. 31*, 68 Okla. 147, 172 P. 639 (1918).

Therefore, § 23-2010.02 imposes a requirement that a signatory indicate a residence address to provide prima facie qualification of the signatory as an elector entitled to sign a recall petition.

We do not suggest that all persons signing a recall petition must personally place their respective addresses on the petition. Courts have interpreted statutory provisions similar to § 23-2010.02 in such a manner as to allow the circulator or some third person to insert the signatory's address pursuant to authorization from the signatory. See, *In re Petition for Removal of Rice, supra; Schumacher v. Byrne, supra; In re State Question No. 137, etc.*, 114 Okla. 132, 244 P. 806 (1926).

Further, we do not suggest that qualified voters without street or number addresses cannot sign a recall petition. We have previously addressed this problem in *Bartling v. Wait*, 96 Neb. 532, 148 N.W. 507 (1914). In that case we held at 536, 148 N.W. at 508:

It is claimed that the petition is defective because 1,852 signers of the petition did not give their complete post office address; that the address is shown only by the city or village in which the signer purports to live, but neither the county nor state in which they live appears on the face of the petition, except that each appears on the other side of each petition. Taking the Antelope county petition as an example, there is a certificate to each sheet to the effect that each of the persons signed his name in the presence of affiant, and that he believes each has signed his name and

post office address correctly, and that each signer is a voter of the state of Nebraska and county of Antelope. The post office address of the respective signers are given "Elgin," "Petersburg," and "Oakdale." The argument is that "John Smith, writing merely 'Aurora' after his name, does not give his post office address." The implication is that each signer must give his street and number and his state. Even without the proof upon the back of the petition, it is a fact of which the court will take judicial notice that there are cities and villages of the names appended, in this state; that the free delivery system is not in force in all the cities and villages in the state, and that in such case a street address is unnecessary and unusual. Furthermore, it is a well-known fact that even in cities and towns the usual post office address of many is merely the name of the city without addition. The petition, therefore, is not vulnerable to these objections.

Cf. *State ex rel. Morris v. Marsh*, 183 Neb. 521, 162 N.W.2d 262 (1968) ("ample evidence" that the signatories resided in Sarpy County, although signatories' addresses appearing on the initiative petition indicated a Douglas County address).

Having ascertained the reason for the residence address provision in § 23-2010.02, we must now determine whether noncompliance with such provision is a "technical" deficiency in the recall petition within § 23-2010.08.

*Technical* means "Immaterial, not affecting substantial rights, without substance." Black's Law Dictionary 1312 (5th ed. 1979).

In characterizing a technical defect the Supreme Court of Rhode Island stated in *Brereton v. Board of Canvassers*, 55 R.I. 23, 35, 177 A. 147, 154 (1934):

A technical error is a deviation from the right course or standard in the performance of any act requiring some skill or technique. It includes an act of volition which erroneously, yet none the less intentionally, departs from a prescribed standard, but which does not go to the very substance or merits of the matter.

Validation of the process to recall a public official from elective office can hardly be characterized as involvement of

insubstantial rights. A requirement which is a fundamental safeguard for an officeholder and petitioner alike, namely, assistance in determining the required number of qualified signatories for a recall petition, must be respected and protected as an integral part of the process for recall of an elected official. On the one hand, the residence requirement protects the elected official from a recall election springing from a petition signed by ineligible voters. On the other hand, the requirement regarding residence address alerts circulators of a recall petition to the possibility that the threshold number of qualified signatories may not have been satisfied. See *Spence v. Terry*, 215 Neb. 810, 340 N.W.2d 884 (1983) (minimum number of signatories is required for a recall petition before verification of signatures is required under Neb. Rev. Stat. § 23-2010 (Cum. Supp. 1982)).

Under the circumstances presented in this case, there is no information concerning the actual addresses of the signatories in question when they signed the recall petitions. A requirement that the residence address of a signatory be placed on a recall petition by the signatory personally or with the signatory's authorization neither hinders nor prevents the recall of an elected official. Whether a signatory is at least an ostensibly (prima facie) qualified voter with respect to the recall petition or whether a signatory may have moved or otherwise changed voting districts with resultant cancellation of registration before signing the petition are preliminary but fundamental questions that cannot be resolved without reference to the signatory's claimed address at signing the recall petition. See Neb. Rev. Stat. § 32-216 (Reissue 1984) (change of residence causing cancellation of voter registration). Were we to accept Lebsack's theory of technical deficiency, then qualification to participate in the recall petition would be established by incorporating into the petition the very voter registration list used to validate voter eligibility, a self-authenticating process impeding inquiry into a signatory's eligibility to sign a recall petition. See Neb. Rev. Stat. § 23-2010.04 (Cum. Supp. 1982) (county clerk or election commissioner shall ascertain whether the requisite number of registered voters have signed the recall petition). Requirements for a recall petition must be accorded the same stature as the

standards applicable to the ballot box. Consequently, failure to fulfill the residence address requirement of § 23-2010.02 was a material and substantial defect in the recall petition involving Quigley.

We hold that the residence address of a signatory must be placed on a recall petition by the signatory personally or with the signatory's authorization. The trial court was incorrect in holding that the 49 questioned signatures were valid for the purpose of the recall petition. Therefore, the recall election should have been enjoined as requested by Quigley.

REVERSED.

KRIVOSHA, C.J., concurring in the result.

While I believe that the decision reached by the majority in this case, under the facts as presented, is correct, I write separately because I believe that the language of the majority opinion may be read more broadly than I believe we intend it to be read. In the instant case there was *no* evidence offered to show that the signatories in question resided or had any actual address in subdivision No. 3 of McCook Public Power District. Absent such evidence, the court had no way of knowing whether the appellee Lebsack did in fact verify whether the signatories to the recall petition were qualified to sign. Standing alone, the majority opinion may be read to the effect that failing to include addresses on a recall petition *automatically invalidates* the petition, even though other evidence is provided to establish without question that the signatories are qualified voters with respect to the recall petition. I do not believe such to be the law, nor do I believe the majority to intend that result. What we are concerned about here is not who places the addresses upon the petition or who directs that they be placed on the petition, but whether we are satisfied that the manner in which the verification takes place has credibility. Obviously, it is self-serving to go to the election list in order to obtain the signatory's address, in order to determine whether the signatory still resides at the address shown on the petition on the day when the petition was signed, in order to establish that the signatory is a registered voter qualified to sign the petition. It is conceivable, however, that affidavits might be provided to establish the truth of the matter, or the area might be small enough that the

addresses of the signatories are general in nature and can otherwise be established. I believe that the declaration set out in the majority opinion must therefore be closely read in light of the evidence in this case, including the fact that there was no evidence as to the correct actual addresses of the signatories.