## THE STATE OF NORTH DAKOTA EX REL. GEORGE D. LAIRD, E. S. Sheveland, John Bauer, Leonard Bauer, and R. W. Frazier, as citizens, taxpayers, and electors of the State of North Dakota, Petitioners, v. THOMAS HALL, John Steen, D. C. Poindexter, William Lemke, and Minnie J. Nielson, as State Board of Canvassers, Respondents.

(186 N. W. 284.)

**Officers — secretary of state exercises duty and discretion concerning sufficiency of recall petitions.**

1. In filing recall petitions and calling a special election thereupon, the secretary of state exercises a duty and a discretion concerning the sufficiency of such recall petitions.

Note.—For authorities discussing the question as to constitutionality of the recall, see notes in 50 L.R.A.(N.S.) 227, and L.R.A.1916D, 1102; 22 R. C. L. 578.

Officers — no objection made, presumption is that secretary of state per-
formed duty and exercised discretion as to recall election.

2. Where the secretary of state has received and filed recall petitions and
has called a special election thereupon, and, where an election has been held
pursuant thereto, without any objection before the secretary of state and with-
out any proceedings in any court prior to such election to review or control
the acts of the secretary of state, it must be presumed that the secretary of
state has performed his duty and exercised his discretion pursuant to the
law and that electors, seeking, after such election, to question the performance
of his duty and discretion, have acquiesced in such presumption.

Injunction — state canvassing board not enjoined from performing duties
because of insufficiency of petition for recall election.

3. In an application for an original writ to enjoin the state canvassing board
from canvassing the returns of a recall election, upon ground of the insuffi-
ciency of the recall petitions, it is improper by equitable interposition to en-
join such canvassing board.

Opinion filed Dec. 30, 1921.

Elections, 20 C. J. § 254 p. 200 n. 33; § 255 p. 201 n. 39.  Injunctions, 32 C. J.
§ 403 p. 256 n. 78.  Officers, 29 Cyc. p. 1406 n. 5, 6 New.

Application for an original writ to enjoin the state canvassing
board.

Application denied.

E. R. Sinkler and S. E. Ellsworth, for petitioners.

Bronson, J.  Petitioners apply for an original writ to restrain the
state canvassing board from canvassing the returns of the recall elec-
tion held on October 28th, 1921.  As taxpayers and citizens, the peti-
tioners allege that on September 17th, 1921, certain recall petitions
were filed with the secretary of state seeking to recall the governor,
the attorney-general, and the commissioner of agriculture and labor.
That the secretary of state, thereupon, designated October 28th, 1921,
as the recall election day; that at the election so held on October 28th,
1921, the governor, the attorney general, and the commissioner of agri-
culture and labor, sought to be recalled, received less than a majority
of the votes cast and that the state canvassing board, unless restrained,
will declare other persons to have been elected to such offices at such
election.  It is further alleged that there were cast at the general elec-
tion held in November, 1920, 229,606 votes for the office of governor;
that the petitions filed were not signed by at least 30 per cent of the

qualified voters who voted at the general election for the office of governor. It is further alleged, and affidavits attached to show, that the recall petitions on an extensive scale were signed by the same individuals twice, or more times; that persons who were not electors or citizens had signed such petitions; that names had been copied upon such petitions in the handwriting of the same person and that these conditions exist to such an extent as to show, from partial investigation made, among other things, that more than 5,000 persons signed their names twice upon such petitions; that more than 1,000 persons signed the same whom were not citizens of the state and more than 10,000 signed such recall petitions who did not vote for the office of governor at the general election, all of which would bring the requisite number of signers upon the petitions below the 30 per cent required by the constitutional amendment. It is the contention of the petitioners that the election held on October 28th, 1921, was void by reason of the insufficiency of the petitions and that, therefore, a writ should be issued to prevent further illegal or void proceedings.

It will be noted that this recall amendment does not provide any machinery, except in a very limited way, concerning the circulation of petitions, the determination of their sufficiency, or concerning the special election to be held thereunder. Necessarily, if such amendment be self-executing and its provisions mandatory, it must call to its aid, in order to facilitate or even to permit its operation, statutory or cognate laws existing. Necessarily, some duty is imposed upon the officer with whom such petition must be filed. The mandatory nature of the amendment under its very terms, specifying by whom the petitions must be signed, the percentage of electors required, and, the duty thereupon imposed upon the officer to call a special election, requires an exercise of a discretion by such officer. The duties of the secretary of state are generally prescribed by statute. The nature of his duties has been often considered by this court. See State ex rel. Linde v. Hall, 35 N. D. 62, 66, 159 N. W. 281; State ex rel. Twichell v. Hall, 44 N. D. 459, 171 N. W. 213. Although he possesses no judicial functions, it is manifest that the self-executing and mandatory features of the amendment require the exercise of a discretion by the secretary of state in passing upon the petitions. Assuredly, in calling such special election, he must call to his aid statutory election laws, so far as ap-

plicable, and other cognate law in order that such discretion may be exercised pursuant to the constitutional amendment. It is certain that if the recall petitions filed, appeared on their face not to have been signed by the requisite percentage required by the constitutional amendment, nor to be signed at all by qualified electors, the discretion of the secretary of state would forbid either the filing of the petitions or the calling of a special election. In the cognate law existing prior to and at the time of, the adoption of the recall constitutional amendment, the duty is imposed upon the secretary of state concerning initiative and referendum petitions to pass upon each petition, and if he finds it insufficient to notify the committee for the petitioners and allow twenty days for correction or amendment. His decision in regard to any such petition is made subject to review by this court. Article 26, Const. Amendment. It is further provided in such article that if the sufficiency of such petition is being reviewed at the time the ballot is being prepared, the secretary of state shall at the time the ballot is being prepared, place the measure on a ballot and no subsequent decision shall invalidate such measure if at such election it is approved by a majority of the votes cast thereof.

The cognate law points out a method for the secretary of state exercising a discretion upon initiative and referendum petitions that are foundational for an election thereupon. Necessarily, pursuant to the constitutional recall amendment, he must exercise a discretion in passing upon the sufficiency of recall petitions unless the mandatory features of the amendment be disregarded and legal safeguards concerning elections be unobserved. The secretary of state, by constitutional amendment, is made the officer with whom the petitions are filed. He is designated as the officer who shall call the special election. Further, pursuant to the recall amendment and statutory election laws, he has been assigned specific duties concerning the nomination and submission of candidates at such recall election, and concerning the election itself. Necessarily, a duty was imposed upon the secretary of state to exercise a discretion concerning, and to pass upon, the sufficiency of the recall petitions, if any force at all be given to the self-executing and mandatory features of the recall amendment. See State ex rel. Little v. Langlie, 5 N. D. 594, 600, 32 L.R.A. 723, 67 N. W. 958; State ex rel. Gongwer v. Graves, 90 Ohio St. 311, 107 N. E. 1018.

The fact that the secretary of state possessed this duty and the right to exercise this discretion and to pass upon the sufficiency of the petitions did not forbid a resort to the courts to review an abuse of discretion by such secretary of state or any fraudulent acts in connection therewith. Accordingly, prior to the election, there existed two methods for questioning the sufficiency of the recall petitions. One, by acts of objection, before the secretary of state, to the sufficiency of such petitions; the other, by proceedings in court to review or control the acts of the secretary of state thereto.

No objection of any kind, nor any appeal, was made to the secretary of state concerning the sufficiency of the recall petitions. No action or proceeding of any kind was taken prior to the election, in any court, to question the sufficiency of such petitions. Without objection or the taking of any proceedings, the secretary of state was permitted to exercise his discretion, to call and to hold the election. It may be conceded, for purposes of this application, that the petition alleges a cause of action to enjoin the calling of a recall election and for a review of the discretion exercised by the secretary of state, if such cause of action had been presented prior to the time of such election, and, further, that the recall petitions must be signed by 30 per cent of the qualified electors who voted at the preceding election for the office of governor. The recall petitions, on their face, purport to be so signed. It may be further conceded that the recall constitutional amendment itself prescribes its mandatory character and the rule of strict compliance to be applied; that, further, it was not intended, through this constitutional amendment, to cast aside all safeguards in election proceedings.

However, the pertinent inquiry, now, is whether, at this time, after the secretary of state has exercised his discretion, without any objection or any appeal to the courts, and after a recall election has been held, this court should invalidate the election and restrain the state canvassing board in the performance of its duties enjoined by law. The petitioners assert that a valid election cannot exist based upon invalid petitions; that the existence of sufficient petitions for a recall are conditions precedent to the calling or holding of a valid special election and any election not so called and held is necessarily void. It remains to be seen whether this premise, asserted by the petitioners, is correct,

based upon the present application and the constitutional amendment concerned.

For purposes of illustration it may be supposed that the sufficiency of the recall petitions, as to the number of qualifications of the signers thereon, had been questioned before the holding of the election, either before the secretary of state or in an appropriate proceeding, and it had been found that by reason of duplications of signatures, lack of legal signatures, and illegalities in procedure such recall petitions contained 1,000, 5,000, or even 10,000 signers less than the number required by the constitutional amendment: Would it be asserted or contended that no recall election could be later held if sufficient and qualified signers additional were submitted and the petitions refiled? Neither the constitutional amendment nor any supplementary legislation provides when such petitions must be signed or filed. Furthermore, for purposes of illustration, it may be supposed that at the recent recall election the officers sought to be recalled were retained by a majority vote of the electors similar to that by which they were defeated. The constitutional amendment provides that, after one such petition and special election, no further recall petition shall be filed against the same officer during the term for which he was elected. Would it be asserted or contended that, subsequently, recall petitions could be filed against the same officer upon the ground that the recall petitions previously filed were invalid and the election held thereupon void? If petitioner's position be correct the election in either event must be set aside; further, additional and qualified signers might be secured, the petitions again refiled, another election called and held, and then, again, the sufficiency of the petitions might again become subject to attack for further insufficiency and, if so found, such election must be set aside and so, ad infinitum. The petitioners do not now question the legality of the election itself or specify any irregularities in the conduct of such election. They question only the sufficiency of the petitions. As hereinbefore stated, it must be apparent that, pursuant to the recall constitutional amendment, the electors of the state have the right to propose and file recall petitions; the electors of the state also have the right to object to the sufficiency of such recall petitions either before the secretary of state or by resort to the courts. These are apparent and concurrent rights. Agencies for the exercise and deter-

mination of these rights anterior to the time of holding a recall election, have been provided. Necessarily, those agencies which have the authority to pass upon the sufficiency of recall petitions prior to a recall election, must be a determining and final authority? Otherwise, it follows that the respective concurrent right of the electors to propose, or, of the electors to object, to recall petitions, may be rendered, in either event, nugatory or useless by the individual action of either after an election, in fact, has been held. Manifestly, where no objection has been made before the secretary of state nor any proceedings taken in court anterior to the holding of a recall election, and where the electors proposing recall petitions are not given any opportunity to exercise their concurrent right, it must be presumed that the secretary of state, in passing upon the recall petitions, has performed his duty. In State ex rel. Little v. Langlie, supra, an action of mandamus was instituted to compel the removal of county offices from Hillsboro to Caledonia upon the ground that the latter was still the lawful county seat. The action was brought after an election had been held and a statutory vote cast for the removal of the county seat to Hillsboro. The validity of the election was attacked upon the ground that the petition presented to the county commissioners was signed by an insufficient number of voters. This court held that, after an election had been held and a sufficient vote had been cast in favor of a place, to work a change of the county seat to such place, the question whether the petition had upon it the requisite number of names was not open to judicial investigation; that, while a sufficient petition was undoubtedly necessary, yet the question lay deeper than that; that the pregnant inquiry was what body was to settle the matter finally; that after an election had been held this court was impelled to the conclusion that the decision of the board was final. See 50 L.R.A.(N.S.) 231, note; L.R.A.1916D, 1107, note; Good v. San Diego, 5 Cal. App. 265, 90 Pac. 44; Conn v. Richmond, 17 Cal. App. 705, 121 Pac. 714, 719; Dunham v. Ardery, 43 Okla. 619, L.R.A.1915B, 232, 143 Pac. 331, Ann. Cas. 1916A, 1148; Laam v. McLaren, 28 Cal. App. 632, 153 Pac. 985. Further, after the holding of such election, it must be presumed that electors objecting to such recall petitions have acquiesced in the presumption that the secretary of state has so performed his duty. To otherwise hold would, in effect, simply make the expressed

49 N. D.—2.

will of the electorate at an election a sporative play to be resolved thereafter into a reality by a determination of validity or invalidity dependent upon proceedings that might be had concerning the sufficiency of recall petitions. This could serve no other purpose than to introduce into governmental affairs hopeless confusion and uncertainty in governmental operations. Assuredly, the recall constitutional amendment contemplates no such construction nor may any such construction be gleaned from the statutory or cognate law. It is well recognized in this state that canvassing boards do not possess judicial functions. They are not concerned with the validity or invalidity of an election. Their duty simply comprehends the reception of the returns and the declaration of the results shown thereby. See State ex rel. Sunderall v. McKenzie, 10 N. D. 139, 86 N. W. 231. The state canvassing board does not even issue the certificate of election. This is issued by the secretary of state. Comp. Laws, 1913, § 1020. It is manifest that the action of the state board of canvassers can neither validate or invalidate the special election held. It would be highly improper for this court, by equitable interposition, to determine the validity of the election concerned, in any event, by injunctive process against such state canvassing board, see State ex rel. Byerley v. State Canvassers, 44 N. D. 126, 172 N. W. 85.

For the reasons stated, the application must be denied.

Birdzell, J. (concurring). The only question for consideration here is whether or not the petition alleges grounds for interference with the contemplated action of the canvassing board. I am clearly of the opinion that it does not. It is unnecessary to go further into the consideration of article 33 of the amendments to the Constitution, than to determine whether or not a duty is imposed upon the secretary of state, in the first instance, to ascertain the sufficiency of petitions filed in his office and to act upon them in accordance with his determination. Clearly, the sufficiency of the recall petition must be determined in the first instance by the officer with whom it is filed, and, when so determined, a mandatory duty is imposed to call an election. State ex rel. Little v. Langlie, 5 N. D. 594, 32 L.R.A. 723, 67 N. W. 958. If the determination is adverse he should refuse to call it. In this instance, the determination was made and the resulting duty performed

more than forty days before the election complained of was held. It is familiar law that voters, no less than parties plaintiff in other capacities, may be estopped to assert their legal rights, if any they have, and that such estoppel arises where they participate in an election thereby seeking to influence its result. It is not alleged that the election did not result in a fair expression of the will of the voters. The facts which preclude the plaintiffs here appear on the face of the petition. Extraordinary relief should therefore be withheld. In my view of the case it is unnecessary to consider the qualifications of a signer to a recall petition. Nor are we required to determine whether the petition herein sufficiently alleges a cause of action if it had been presented prior to the election. It was not so presented. According to my view it does not state facts warranting the relief sought, and I join in denying it.

CHRISTIANSON, J. (concurring). I concur in the principles stated in the syllabus, and in the conclusion reached in the opinion prepared by Mr. Justice Bronson.

The petitioners ask for the issuance of a prerogatory writ restraining the state canvassing board from canvassing the returns and announcing the result of the recall election held Oct. 28th, 1921. The sole ground alleged by the petitioners as a basis for the proceeding sought to be instituted by them is that the petitions, filed with the secretary of state asking for the recall of the three state officers in question, were insufficient. There is no charge, however, that the winning candidates were in any manner responsible for the acts complained of. It is not denied that the petitions were prima facie sufficient; but it is contended that, as a matter of fact, the petitions were not signed by a sufficient number of qualified petitioners.

In my opinion, there are at least two good reasons why the writ should be denied.

(1) It is undisputed that the recall election was called and held; that the election officers of the different election precincts in the state certified their returns to the respective county auditors; that in the different counties of the state the various boards created by law for that purpose met and canvassed the returns from the different election precincts; that the returns from the different counties were duly cer-

tified and transmitted to the secretary of state. All this, without any attempt on the part of the petitioners or anyone else to question the sufficiency of the petitions, or the validity of the election. The only thing that now remains to be done under the election laws is for the state canvassing board to meet, and publicly examine the statements and returns filed by the different county auditors, and make a statement of the whole number of votes given at the election for each of the three officers, and upon each of the different measures, voted upon at such election. The statute makes it the duty of the state canvassing board to meet and canvass the result of an election. Comp. Laws, 1913, § 1018. It seems too clear for argument that a court would not be justified in interfering with the action of this board. No case has been cited and none has been found where judicial power has been so exercised; while many cases hold that it may not be so exercised. See note in 50 L.R.A.(N.S.) 231 et seq.

(2) There is another reason why the writ should not issue. The petition in this case alleges that certain recall petitions were filed with the secretary of state; that pursuant thereto the secretary of state called a recall election; that such election was held with the result that the candidates opposing the officers sought to be recalled received a majority of the votes cast at the election. It is made the duty of the secretary of state, when recall petitions signed by a prescribed number of qualified electors are filed, to call an election. No specific provision is made as to how the sufficiency of the petition shall be ascertained. There can be no question, however, but the duty is imposed upon the secretary of state to determine, at least in the first instance whether the petitions are signed by the number of electors prescribed. In this case the secretary of state must have reached the conclusion that the petitions were signed by the required number of qualified electors for he called the election. State ex rel. Little v. Langlie, 5 N. D. 594–600, 32 L.R.A. 723, 67 N.W. 958. There is no contention that any objection was made before the secretary of state, or that his determination that the petitions were sufficient was in any manner assailed. There can, I think, be no question but that the determination of the secretary of state was at least prima facie correct, and some courts have ruled, under somewhat similar provisions, that the decision of the secretary of state has even greater effect.

No attempt was made to question the correctness of the determination of the secretary of state until after the election had been held and returns made by the local election officers, and such returns canvassed by the county canvassing boards and certified to the secretary of state. All expense incident to the election has been incurred. Not only the relators but the officers whose terms of office were involved not only permitted this to be done, without any objection, but acquiesced and participated in the election. It would seem that the most elementary rules of common justice and common sense would preclude them from asserting at this time that the secretary of state had no legal right to call the election; that his action in so doing and the election held were and are mere nullities, and that in the eyes of the law an election has not been had. And such, as I read the authorities, is the established law. See 9 R. C. L. pp. 1173, 1174.

It is well settled that a wholly different rule applies in considering the effect of noncompliance with the provisions of election laws where it is sought to set aside the result of an election from that which applies where the question of non-compliance is raised before the election is held. Ruling Case Law (9 R. C. L. p. 1173) says: "It is the duty of the courts to uphold the law by sustaining elections thereunder that have resulted in a full and fair expression of the public will, and from the current of authority the following may be stated as the approved rule: All provisions of the election law are mandatory if enforcement is sought before election in a direct proceeding for that purpose; but after election, all should be held directory only, in support of the result, unless of a character to effect an obstruction to the free and intelligent casting of the vote, or to the ascertainment of the result, or unless the provisions affect an essential element of the election, or unless it is expressly declared by the statute that the particular act is essential to the validity of an election, or that its omission shall render it void. Voters finding a ticket or the names of candidates on the official ballot are not required to determine whether they are entitled to a place thereon, but may safely rely on the action of the officers of the law, and on the presumption that they have performed their duty. And so an election in which the voters have fully, fairly, and honestly expressed their will is not invalid because the certificate of nomination of the successful candidate is defective through

the omission of some detail. Nor is the title of the successful candi-date affected by a subsequent decision holding the law under which the nominations were made invalid. . . . Where there is a neglect on the part of one to avail himself of a right given him by statute, he cannot, when the result of the election is announced and he finds himself defeated at the polls, ask the court to nullify the expressed will of the voters on the ground of the error or wrong of the county clerk, which he could by reasonable diligence have had corrected. If no ante election objection to a nomination is made, the provisions of the statute are to be treated as directory." This is in harmony with the rule announced by this court in State ex rel. Little v. Langlie, supra. That action involved the validity of an election for the re-moval of the county seat of Traill county. The validity of the election was attacked upon the ground that the petition presented to the county commissioners asking for such election was not signed by a sufficient number of voters. In disposing of this contention, the court said, among other things: *"We do not think that, after an election has been held, and a sufficient vote has been cast in favor of a place to work a change of the county seat to such place, the question whether the petition had upon it the requisite number of names is open to judicial investigation."* The principle stated, and in fact, the very language used is directly applicable here. There is no charge here that there was any fraud or irregularity in the conduct of the election itself, or that a fair and full expression of the public will was prevented by reason of anything that was done or omitted. Nor is there any charge that the winning candidates were in any manner responsible for the acts complained of with respect to the recall petitions. The contention is merely that the petitions were not sufficient, and that the determina-tion of the secretary of state that they were sufficient, is erroneous, and that the election should not have been called. For the reasons stated, I am satisfied that that question may not be raised, and is not one for judicial investigation, after an election has been held.

ROBINSON, J. (concurring). Now, at this late day, twenty-four days after the recall election, held on October 28, 1921, five persons claiming to be citizens and taxpayers, file a petition asking the court to enjoin respondents, the state canvassing board, from canvassing the

votes and certifying the result of the election. The petition is based on alleged defects in the petition filed for the recall of Governor Frazier William Lemke, Attorney General, and John N. Hagan, Commissioner of Agriculture. It is contended that the petitions do not contain a sufficient number of legal signatures to warrant the recall election; that on the recall petitions large numbers of signatures are forged and a large number duplicated and many have signed who did not vote for Governor at the general election in 1920. However, it does appear that at the general election in 1920 the total number of votes cast for Governor was 229,606, of which thirty per cent is 68,882, which is the number of legal voters that should appear on each recall petition. The recall petitions on their face purport to be signed by legal voters which number as follows:

For the recall of Governor Franzier, 73,893; for the recall of William Lemke, 73,237; for the recall of Mr. Hagan, 73,187.

Of course the recall petitions are on file in the office of the secretary of state and are there subject to inspection. It is quite possible that the petitions contain some duplicates and signatures of persons not legal voters, but from an examination of each petition no one can say that it does not contain signatures of at least 68,882 legal voters. The petitions were filed in the office of the secretary of state on September 16, 1921 and the officers against whom the recall was filed promptly caused petitions to be examined and copied and then caused $10,000 of the state emergency fund to be transferred to Secretary Hall for the purpose of the recall election by publishing and distributing the state publicity pamphlets. Accordingly the election was called and held and the votes have been duly certified to the secretary of state and it is generally conceded that the officers recalled have lost by a margin of votes exceeding four thousand. The recall amendment is to this effect:

"The qualified electors of the state or of any county, or of any congressional, judicial or legislative district may petition for the recall of any elective, congressional, state, county, judicial or legislative officer by filing a petition with the officer with whom the petition for nomination to such office in the primary election is filed demanding the recall of such officer. Such petition shall be signed by at least thirty per cent of the qualified electors who voted at the preceding election for

the office of governor in the state, county or district from which such officer is to be recalled. The officer with whom such petition is filed shall call a special election to be held not less than forty or more than forty-five days from the filing of such petition."

It is claimed that under this recall amendment no elector may sign a recall petition unless he has voted at the preceding election for the office of governor and that numerous persons who signed the recall petition had not so voted; but that is not a fair construction of the amendment. Its plain meaning is "The qualified electors may file the petition" and it must be signed by a number of electors equal to thirty per cent of the votes given for the office of governor. The officer who orders a special election must do so on inspection of the petition and neither he nor the canvassing board have any means of determining how a person voted at a prior election. Statutes must be given a construction that is workable and practical. A petition for the recall of state officers must be filed with the secretary of state and he must call an election to be held not less than forty nor more than forty-five days after the filing of the petition. Clearly the sufficiency of the petition must be determined from an inspection of the same, and not from affidavits, and hence, to avoid mistakes quite certain to occur in a lengthy petition, it is common to obtain an extra number of signatures, and that is doubtless a reason why the petitions in this case contain about five thousand additional signatures.

When a referendum or initiative petition is filed with the secretary of state he is required to pass upon the sufficiency of the petition, and if it be found insufficient to notify the committee for the petitioners and to allow twenty days for an amendment. His decisions are subject to review by the supreme court, but if a measure is approved by a majority of the voters, no subsequent decision shall invalidate the votes cast. The decision by the voters becomes final. There is no good reason why the same principle should not govern a recall election. The purpose of a petition is to show a general or widespread demand for a recall, and after such demand has been shown by the votes at the polls, the petition becomes of little consequence. It is then functus officio. Thus it is held: "After a county seat election has been ordered and held, and a sufficient vote is cast in favor of some one place to work a relocation of the county seat, the questions whether

the petition presented to the board of county commissioners praying that such an election be held was signed by a sufficient number of voters is not open to judicial investigation, when the board has found that it was so signed." State ex rel. Little v. Langlie, 5 N. D. 594, 32 L.R.A. 723, 67 N. W. 958.

Now the statute does provide for the manner of conducting elections and of certifying the votes to the secretary of state and for the canvass of the votes by the state board of canvassers. The board is required to certify and determine what persons have been, by the greatest number of votes, duly elected to office and to make and subscribe a statement or certificate of such determination and deliver the same to the secretary of state. Code, § 1019. Then the secretary of state shall record in his office such certified statement and determination so made by said board and shall forthwith make and transmit to each of the persons thereby declared to be elected a certificate of election as hereinafter provided, and he shall also forthwith cause a copy of such certified statement and determination to be published in a newspaper printed at the seat of government. Code, § 1020.

Now, by the petition in this case, the court is asked to enjoin the canvassing board from the performance of their plain duty as prescribed by statute. The petition is without equity and without any warrant of law.

GRACE, Ch. J. (specially concurring). This proceeding was brought by the petitioners for the purpose of procuring a prerogatory injunctional writ, to restrain the state canvassing board from canvassing the returns and announcing the result of the recall election of October 28th, 1921.

As a preliminary step in the bringing of the recall election, certain petitions for the recall of the governor, attorney general and commissioner of agriculture were circulated. Each of the petitions apparently contained more than the requisite number of signers, that is, they were signed by presumptively legal voters in numbers greater than required by article 33 of the constitutional amendments. In this condition the petitions were presented to the secretary of state for filing. If the petitions were in proper form and contained the requisite number of signatures, it was his ministerial duty to file them. He could

not know from the face of the petitions whether all signatures on them were genuine, nor could he know from the inspection of them that some were fraudulent, if there were such, but he could properly presume, prima facie that all the signatures thereon were genuine and made in good faith, and, that presumption would continue until positive proof to the contrary is seasonably made to appear. The petitions were filed without any objection having been made to any of the signatures thereon. The secretary of state was required by the provision in question of the constitution to call an election to be held within forty-five days after the time the petitions were filed; he did call the election, and within the forty-five days the election was held. The electors of the state decreed by a majority vote that the officers against whom recall petitions were filed, should be recalled, and at the same election elected in their stead others as their successors.

The recalled officers have in no way contested the election. They thus impliedly conceded the validity of the election. No one legally disputed the validity of the election except plaintiffs, who bring this proceeding in the relation of taxpayers, and this after state wide election has been held, as a result of the filing of the petitions. The petitioners had all of forty-five days which elapsed, between the filing of the petition and the day of election, to have brought a proceeding similar to the one they now bring. They did not do so. They slept upon their rights during all of that time, and now since the election, conducted at large expense, and since every elector has had an opportunity to vote upon the issues of the election, we think the plaintiffs are estopped at this late time to maintain the proceeding which should have been maintained if at all during the period of time between the filing of the petitions and the date of the election.