[File No. 6071.]

JOSEPH COGHLAN, Respondent, v. J. R. CUSKELLY, as County Auditor of Dunn County, North Dakota, Appellant.

(244 N. W. 39.)

Opinion filed June 18, 1932.

H. L. Malloy and J. P. Cain, for appellant.

Joseph Coghlan, for respondent.

NUESSLE, J. Article 33 of the amendments of the constitution of North Dakota, provides:

"The qualified electors of the state or of any county, or of any congressional, judicial or legislative district may petition for the recall (of) any elective congressional, state, county, judicial or legislative officer by filing a petition with the officer with whom the petition for nomination to such office in the primary election is filed, demanding the recall of such officer. Such petition shall be signed by at least thirty per cent of the qualified electors who voted at the preceding election for the office of governor in the state, county or district from which such officer is to be recalled. The officer with whom such petition is

filed shall call a special election to be held not less than forty or more than forty-five days from the filing of such petition.

"The officer against whom such petition has been filed shall continue to perform the duties of his office until the result of such special election shall have been officially declared. Other candidates for such office may be nominated in the manner as is provided by law in primary elections. The candidate who shall receive the highest number of votes shall be deemed elected for the remainder of the term. The name of the candidate against whom the recall petition is filed shall go on the ticket unless he resigns within ten days after the filing of the petition. After one such petition and special election, no further recall petition shall be filed against the same officer during the term for which he was elected. This article shall be self executing and all of its provisions shall be treated as mandatory. Laws may be enacted to facilitate its operation, but no law shall be enacted to hamper, restrict or impair the right of recall."

On May 18, 1932, a petition to recall Senator Jones of the 48th Legislative District was filed with the defendant Cuskelly, county auditor of Dunn county, the senior county of the 48th District. This petition purported to be signed by 2504 electors. The number of signatures required pursuant to article 33, supra, was 1710, being 30 per cent of the number of votes cast for governor at the last election. On May 20, a petition was filed with the defendant purporting to be signed by 921 of the electors who had signed the recall petition filed on May 18, requesting that their names be stricken and withdrawn from the recall petition. On May 20, a supplemental recall petition signed by 354 additional electors was filed, and between that date and May 23 further withdrawals of signatures on the original recall petition in the number of 268 were filed. The defendant auditor held that by the filing of these withdrawals the signers thereof had removed their signatures from the recall petition and that thereby the number of signatures thereon was reduced below the requisite 30 per cent and so the petition was not sufficient. Accordingly, he refused to call the special election.

Thereupon on May 24th the petitioner applied to the district court of the Sixth Judicial District for an alternative writ of mandamus to be directed to the defendant auditor to compel him to call an election.

The defendant appeared on the return day and moved to quash the alternative writ on the ground that the application was premature in that it was brought before the expiration of the five day period within which the auditor might determine the date of the election. The district court denied the motion to quash. Thereupon the defendant filed his return, setting up the facts with reference to the filing of the petitions and of the withdrawal petitions. The facts were all stipulated. No oral evidence was offered. The parties further stipulated that the only question for decision was whether or not electors who have signed a recall petition may withdraw their signatures therefrom, and if in the instant case the first withdrawals of 921 names may be considered, whether or not the second withdrawals filed after the supplemental recall petition was filed may also be considered. The district court held that at once the petition was filed with the county auditor it was too late for any signer thereof to withdraw his signature therefrom, as jurisdiction coupled with a mandatory duty to call the election attached with the filing of the petition. In accordance with this holding a peremptory writ was ordered. This appeal is from the judgment entered accordingly.

It is to be noted, first, that no point is made because the proceeding is brought by the plaintiff individually and not in the name of the State on his relation. We take it that this point is waived and that the proceeding is to be considered as though brought on the relation of the plaintiff.

The defendant predicated his motion to quash on the theory that the proceeding was prematurely brought; that the auditor under article 33, supra, had a period of five days within which to consider the petitions and pass upon their sufficiency, and that until the expiration of such five day period no coercive writ might be procured. We think, however, that this contention cannot be sustained for the reason that it sufficiently appears from the moving affidavits that the auditor had unqualifiedly refused to order the election.

The principal and determining question on this appeal is that which is stated in the stipulation of the parties; that is, as to whether an elector who has signed a recall petition which is subsequently filed with the officer charged with the duty of calling the election may, after the

filing of such petition and before the election has been called, withdraw his signature therefrom.

It should be noted first that article 33 among other things, provides: "This article shall be self executing and all of its provisions shall be treated as mandatory. Laws may be enacted to facilitate its operation, but no law shall be enacted to hamper, restrict or impair the right of recall." A provision identical in form is also contained in articles 26 and 28 of the amendments. Pursuant to this provision of these several articles, chapter 135, Sess. Laws 1925 was enacted. This statute prescribes the manner in which petitions shall be signed and filed, and penalizes a violation of its provisions. In Wood v. Byrne, 60 N. D. 1, 232 N. W. 303, involving an initiative petition, and again in Schumacher v. Byrne, 61 N. D. 220, 237 N. W. 741, involving a referendum petition, we construed chapter 135, supra, and said concerning the same that the legislative intent in adopting it was to regulate and facilitate the circulation of such petition so as to aid the secretary of state in passing upon each petition as required by the provisions of the constitution, and that the act must be liberally construed so as to effect its purpose. These cases arose under articles 26 and 28 of the amendments of the constitution providing for the initiative and the referendum respectively. These articles differ from article 33 now under consideration, among other things in this, that article 26—and the same provision is expressly made applicable to article 28—provides that "The secretary of state shall pass upon each petition, and if he finds it insufficient he shall notify the 'committee for the petitioners' and allow twenty days for correction or amendment. All decisions of the secretary of state in regard to any such petition shall be subject to review by the supreme court. . . . If proceedings are brought against any petition upon any ground, the burden of proof shall be upon the party attacking it," while there is nothing in article 33 touching the circulation of petitions, the determination of their sufficiency, the duties of the officer with whom such petitions shall be filed or the special election to be held thereunder, excepting that such petitions shall be filed with such officer and that he "shall call a special election to be held not less than forty or more than forty-five days from the filing of such petition." But in State ex rel. Laird v. Hall, 49 N. D. 11, 186 N. W. 284, decided in 1921, and involving the recall provision, article 33,

supra, this court held, as stated in the first paragraph of the syllabus: "In filing recall petitions and calling a special election thereupon, the secretary of state exercises a duty and a discretion concerning the sufficiency of such recall petitions." Of course it goes without saying that the legislature has no power to add to or take from the powers and duties of the officer in question. All it can do is to enact laws to facilitate the operation of the article. And so this must be and was held to be the purpose of chapter 135, supra. But in considering the statute with respect to article 33, it must be borne in mind that it was enacted subsequent to the decision of State ex rel. Laird v. Hall, supra, and that it makes specific reference not only to the initiative and the referendum but also to the recall. So we think that this statutory enactment must be given the same construction and effect with respect to article 33 as with respect to articles 26 and 28 of the amendments.

Since the officer with whom recall petitions must be filed is vested with discretion concerning their sufficiency, our next inquiry is as to when that discretion must be exercised. The first duty of this officer is to file such a petition when it is presented to him. If the petition is fair on its face he must receive it and file it. We have heretofore pointed out the difference between articles 26 and 28 and the article now under consideration. No provision is made in article 33 with reference to this matter other than that the petition must be filed. No procedure is prescribed nor machinery provided whereby the filing officer can investigate into the merits of the petition or go beneath its surface to pass upon its sufficiency. When an elector signs a recall petition, he does so under power reserved to him by the constitution. When he and his co-signers file their petition they determine the time when their petition shall become effective. They and not the filing officer determine this fact. So we are forced to the conclusion that if the petition is fair on its face he must receive it, and having received it the petition must be considered filed as of the date when it was received. No other construction of this article is practicable and no other construction will reasonably facilitate its operation and effect its purpose. The article is general in its application, it applies to all elective state, county, judicial and legislative officers. The number of electors concerned may vary from a few hundred to hundreds of thousands. Under these circumstances, and especially in the absence of any provision for

procedure or machinery to enable him to make a preliminary investigation, no other conclusion is possible. See State ex rel. Plain v. Falley, 8 N. D. 90, 76 N. W. 996.

In the instant case the petition was received and filed. The facts are thus stipulated. It is the appellant's contention that under the provision that the election must be called to be held not less than forty or more than forty-five days from the filing of such petition, a five day period is given to the filing officer within which to scrutinize the petitions and pass upon their sufficiency, including the validity of the signatures and the qualifications of the signers. It seems to us, however, that the provision thus relied upon was not for this purpose and cannot be given this effect. Rather, it was for the purpose of enabling the officer charged with the duty of doing so to fix a proper and convenient day on which the election must be held, for if an arbitrary time after filing were fixed without any room for variation, the election might fall upon a holiday or some other day on which for one reason or another it might not be advisable to hold it. So the officer's discretion by reason of this particular provision is limited to the selection of a day for the election within a five day variation. Neither do we think that the election must necessarily be called within five days from the filing of the petition. Article 33 provides that an election must be called to be held not later than forty-five days after the filing of the petition. Necessarily, this contemplates a good petition—a petition signed by qualified electors equal in number to at least 30 per cent of the number voting to fill the office of governor in the particular district at the last preceding election. There is no provision fixing the date on which or the period within which he must act in calling the election. It may be called at any time prior to the date selected so only that sufficient time intervenes to enable the election to be properly called and had. The only requirement imposed upon the officer in this respect is that he must act with reasonable celerity.

The filing of the petition sets in motion the machinery which results in the election. The time is limited within which the election may be held. The officer with whom the petition is filed "shall call an election to be held not more than forty-five days from the date of the filing." There is no provision for hearing on the petition or for protest or remonstrance. There is no provision for the withdrawal of signatures.

There is no provision for correction or amendment, and in this respect as we have heretofore pointed out, article 33 differs from articles 26 and 28. When a petition is filed it is in fact either good or bad, either sufficient or insufficient. If it is good and sufficient the officer has no discretion thereafter except that permitted him by reason of the five day variation for the date of the election. He "shall" call the election. If the petition is insufficient and bad then, though the petition has been filed, he must refuse to call the election. As we have shown above, in filing such a petition and calling a special election thereupon, he is vested with a discretion concerning the sufficiency of the petition. Chapter 135, supra, was enacted to aid him in exercising that discretion, but in its exercise at the time of the filing of the petition he can only determine as to whether or not it is sufficient upon its face. So it seems to us, considering the mandatory character of article 33, that the petition must be determined to be good or bad as of the date when it is filed. Taking into account the peremptory direction to the filing officer by reason of the filing, we can come to no other conclusion. See Seibert v. Lovell, 92 Iowa, 507, 61 N. W. 197, cited with approval by this court in Sim v. Rosholt, 16 N. D. 77, 112 N. W. 50, 11 L.R.A. (N.S.) 372. In this connection it must be remembered that in the instant case there is no question as to the sufficiency of the petition as of the date of its filing with the defendant auditor.

Many cases may be found in the books touching upon the right to add to or withdraw signatures from jurisdictional petitions. These cases arose under a variety of conditions and circumstances. They disclose that there is a marked diversity of holding with respect to the question of the right to withdraw. This is illustrated by the cases cited in the note to Sim v. Rosholt, supra. See also cases cited in notes in 15 Ann. Cas. 1125; Ann. Cas. 1916B, 823; 35 L.R.A.(N.S.) 1113; 50 L.R.A.(N.S.) 195; L.R.A.1916D, 1102; and L.R.A.1917B, 15. But almost without exception each of these cases turns upon the wording of the particular ordinance, statute, or constitutional provision under which it arises and is of no great value as a precedent except in the consideration of a similar provision.

We therefore hold that after the petition in the instant case was filed

it was too late for any signer thereof to withdraw his signature therefrom. The judgment must accordingly be affirmed.

Burr and Burke, JJ., concur.

Christianson, Ch. J. (dissenting). The great question presented for determination in this case is whether a signer on a recall petition may withdraw his name therefrom before the officer with whom it is required to be filed has determined the sufficiency thereof, and called the election. The question thus presented is one of great importance and affects the rights of every individual elector in the state. The answer to the question must be sought, and found, in the constitutional provision relating to the recall. The language of that provision is such as to render the question one of considerable difficulty. No reference is made therein for withdrawal of names from a recall petition. But it does not follow from this either that a signer to such petition has, or does not have, the right to withdraw his name therefrom. The question whether and when a petitioner may withdraw his name from a petition which forms the basis for some contemplated governmental action has arisen in many cases and in widely varying circumstances.

While the reported cases furnish little assistance as regards the specific question presented here, as the different cases are controlled largely by the particular statutory or constitutional provisions involved, they do shed some light upon the general question of the right of a petitioner to withdraw his signature and the circumstances in which such right impliedly exists. No authority has been found which denies to a petitioner the right to withdraw his name while the petition is still in circulation and before it has been presented to the person or body with whom it is required to be filed. Neither do any of the authorities recognize the right of a petitioner to withdraw his name from a petition after it has been finally acted upon and the prayer thereof has been granted by the person or body who is required to act upon it.

In a number of cases the rule is announced that one who has signed a petition may withdraw his name therefrom at any time before final action has been taken pursuant thereto by the board or officer empowered to determine the matter which the petitioners seek to have determined. Note in 11 L.R.A.(N.S.) pp. 372, et seq. In other cases

the right to withdraw from a petition is held to be more limited and is deemed to be terminated when the officer or board to whom it is presented recognizes the validity of the petition and takes action thereon looking toward the final disposition of the proceeding or matter sought to be initiated by the petition. Note in 11 L.R.A.(N.S.) pp. 372, et seq.

The courts have generally held that, as regards the right of a petitioner to withdraw his name, a recall petition is subject to the same rules as a petition for any other election. Rominger v. Nellor, 97 Wash. 693, 167 Pac. 57; Laam v. McLaren, 28 Cal. App. 632, 153 Pac. 985. The question whether a petitioner for a recall election may withdraw his name from the petition and, if so, when, is presented to this court for the first time in this case. But the question of the right of a petitioner to withdraw his name from a petition in other proceedings has arisen and been presented to this court for determination in the following cases: Sim v. Rosholt, 16 N. D. 77, 112 N. W. 50, 11 L.R.A.(N.S.) 372; Rosten v. Board of Education, 43 N. D. 46, 173 N. W. 461; State ex rel. Knox v. Stevens, 48 N. D. 47, 183 N. W. 109; State v. Farmers Bank, 61 N. D. 427, 238 N. W. 122.

Sim v. Rosholt, supra, involved a petition for the establishment of a drain. In that case the court held (Syllabus, ¶ 1) that "the jurisdiction of the board of drain commissioners to order such drain is acquired by the filing with the board of a petition as therein required, and after such jurisdiction is thus acquired, and the board has taken action thereunder, it cannot be divested of such jurisdiction by the action of the petitioners in withdrawing their names from the petition."

Rosten v. Board of Education, 43 N. D. 46, 173 N. W. 461, supra, involved a petition for the annexation of certain territory to a special school district. The statute required notice to be given of the hearing of the petition. Certain petitioners sought to withdraw their names from the petition after it had been filed and notice of the hearing had been given, but before the hearing had been had. The court held that the petitioners had the right to withdraw their names from the petition "at any time prior to the time of the making of a legal order by the Board of Education annexing the territory." Syllabus, ¶ 1.

State ex rel. Knox v. Stevens, 48 N. D. 47, 183 N. W. 109, supra, involved a petition to divide a common school district and to organize

a new district out of a portion of the former district. The statute required public notice of the petition to be given to the residents of the districts whose boundaries would be affected by the organization of a new district. A number of the signers on the petition signed a remonstrance which was presented and filed after notice had been given of, but before final action had been taken on, the petition. The court held that the petitioners had a right to withdraw their names and that the withdrawal was timely.

State v. Farmers Bank, 61 N. D. 427, 238 N. W. 122, supra, involved an application for the liquidation of an insolvent bank by a committee chosen by the depositors. Laws 1927, chap. 99, § 21. The statute provided that when a bank had been closed and placed in charge of a receiver, the "deposit creditors" thereof might cause the liquidation to be withdrawn from the receiver and placed in the hands of a liquidating committee. The statute required, as a prerequisite to this mode of liquidation, that a plan of liquidation be agreed upon in writing by at least eighty per cent of the deposit creditors, "exclusive of public money secured by indemnity bonds or otherwise." The statute further provided that after such plan had been approved by the state examiner, upon application to the court by whom the receiver had been appointed, the liquidation of the bank should be "withdrawn from the receivership" and vested in the liquidating committee. A liquidating plan conformable to the provisions of the statute had been formulated and presented to the court. The court thereupon issued its order to show cause directing the receiver formerly appointed by it to show cause why the application to have the bank withdrawn from the receivership and vested in the liquidating committee should not be granted. Upon the hearing pursuant to the order to show cause the receiver presented a petition, signed by a number of the persons who had signed the instrument providing for liquidation under the direction of the liquidating committee, asking that their names be stricken from such instrument. The question arose whether these persons had a right to withdraw their names from the liquidating plan. This court held that they might withdraw their names therefrom at any time before the application had been granted by the court.

The object sought to be accomplished by the petition in question here is to have an election held for the recall of a state senator. The

officer empowered to receive and file such petition is not merely a clerk charged with the ministerial duty of receiving and placing on file whatever may be presented to him labeled "a petition;" he is charged with the duty and vested with the power of passing upon and determining, in the first instance, the sufficiency of the petition, and this function includes a determination of whether the petition has been signed by the number of electors prescribed by the constitutional provision. State ex rel. Laird v. Hall, 49 N. D. 11, 186 N. W. 284.

In this case it was stipulated as a fact in the trial court that "on the 20th day of May, 1932, and before any action was taken on the recall petitions," there was filed in the office of the county auditor of Dunn County a petition containing 921 names of the signers of the recall petition asking that their names be stricken and withdrawn from the recall petitions and that "if it is legal to file and have considered said withdrawal petitions" it reduces the number of signers on the recall petitions to less than 30 per cent of the vote cast for governor at the last preceding election.

The constitution makes it the duty of the designated officer to call a recall election when a petition for such election has been filed with him "signed by at least 30 per cent of the qualified electors who voted at the preceding election for the office of governor in the state, county or district from which such officer is to be recalled."

A recall election is obviously a most serious matter. It is only when a sufficient petition so signed is filed that the officer has the power to call the election. Otherwise, he is wholly without authority to call an election. State ex rel. Laird v. Hall, 49 N. D. 11, 14, 186 N. W. 284.

If before the sufficiency of the petition has been determined and the election called, a number of the signers make written demand that their names be withdrawn from the petition and thus express their purpose and conclusion that such an election ought not to be held, can they still be regarded as petitioning for the election? If a large number of the original signers thus solemnly and clearly manifest their change of purpose before an election is called, so that the number actually favorable to the recall is reduced to a mere fraction of the constitutional minimum, can it be said that a sufficient petition is filed? Perhaps the answer to the question is not obvious, but it seems to me when the nature and purpose of a petition for a recall election is con-

sidered, it being a product of voluntary action, it is more reasonable to give effect to the full voluntary expression than to force an elector to be irrevocably bound by his first expression while no rights have been affected thereby.

In the absence of any express provision in the constitution to the contrary that interpretation seems most reasonable which is consonant with the prevailing rules as regards the withdrawal of names from a petition.

Many, if not most, of the provisions of law relating to the recall require the grounds for the proposed recall to be stated. This is true, for instance, of a petition for the recall of an officer of a city in this state. Comp. Laws 1913, § 3835. However, the recall provision of the constitution does not require any grounds to be stated. It is possible, therefore, for those who circulate a recall petition to present to each signer a wholly different reason why the officer should be recalled. Obviously, the electors are not likely to sign the petition unless they deem to exist some valid ground for such action. It should not be assumed that electors sign such petitions as a matter of mere whim or caprice. The consequences, both from the standpoint of the officer and the public, are too serious for that. It is, therefore, only fair to assume that a person who circulated such petition must have presented to each signer some impressive reason why the officer should be recalled. Later, if a signer should ascertain that the grounds represented did not exist, why should he be precluded from rescinding his action before anyone has been affected by it? I can see nothing in the constitutional provision regarding the recall that requires such construction. I can see nothing in it that prevents an elector from withdrawing his name from a petition in the same circumstances that would entitle him to withdraw his name from any other petition looking toward governmental action.

It seems to me that the underlying philosophy of the recall provision of the constitution is in harmony with the view that he may withdraw. It attaches governmental significance to the voluntary action of petitioners. The matter is subject to the control of electors who evidence by their action a common desire, and, when the unmistakable written evidence is that such desire is not joined in by the requisite number, the calling of an election, notwithstanding that fact, amounts to giving

effect to the expression of a desire shared by less than the constitutional minimum. Thus to deny the right to withdraw is in effect to override the primary requirement that a recall election is to be called only upon the voluntary concurrence of at least thirty per cent of the electors.

Under the law no supervision is had over a recall petition that is being circulated. A person circulating a petition is not an official in any sense of the word. The petition does not come into the hands of any official until it is filed with the officer designated to receive it. If a signer is inhibited from withdrawing his name, then it is possible that a recall election may be had where at the time the election is called not a single petitioner actually has any desire that such election be held.

That the signer to a petition has a right to withdraw his name before final action has been taken, or before its validity has been determined by the officer or board to whom it is required to be presented, has frequently been recognized. In Littell v. Vermilion County, 198 Ill. 205, 65 N. E. 78, in considering a petition for the organization of a new township, the court said:

"Each petitioner acts on his own individual responsibility, and if he should change his mind on the question whether a new township would better serve the convenience of the inhabitants residing therein, or if he should be induced to sign it under a misapprehension or undue influence, he ought to have the right to correct his mistake if he does so before the rights of others have attached by the final action on the part of the Board."

In La Londe v. Barron County, 80 Wis. 380, 49 N. W. 960, the court, having under consideration a petition for the removal of a county seat, said:

"What valid objection is there, either in law or on grounds of public policy, against allowing a person who has signed a petition asking for a removal of the county seat from withdrawing his name from the petition before it is acted upon by the board? As the learned counsel for the defendants say, a person may have been deceived or entrapped, or through inadvertence or thoughtlessness may have signed such a petition, and on reflection and before action is taken on it, may desire to correct his action and withdraw his name. Why should he not have the right and privilege of doing so? An intelligent man, acting delib-

erately and understandingly, may change his mind on such a question, and conclude he has made a mistake in asking for a change of the county seat, and that the public interest will be promoted by having the county seat remain where it is. All this is plain and obvious to any one reflecting upon the subject. The statute goes upon the theory that two-fifths of the legal voters desire and ask for a change and that the question be submitted to a vote of the electors, manifesting their wish by signing their petition for that purpose, and that this wish continues to the time the board acts upon the petition. The law goes upon that theory."

The reasons given by these courts seem peculiarly applicable here. The petition for a recall election is quite unlike a petition for the construction of some improvement such as that involved in Sim v. Rosholt, supra. There the different signers had an interest in a proposed drain by virtue of their ownership of property to be benefited. Here the individual signer acts as an elector. The signatures are obtained at different times and under different circumstances and conditions. It is a matter of common knowledge that the signers exercise no control over the petitions which they have signed. These remain in the hands and under the control of the persons who have circulated them. Surely it would seem that in these circumstances it must have been intended that any signer who, for reasons sufficient unto himself, desires to withdraw his name, has a right to do so at any time before the officer with whom it is filed has determined its sufficiency and called the election. Such signer is in fact no longer a petitioner, and ought not to be so considered in the eyes of the law. Rosten v. Board of Education, 43 N. D. 46, 173 N. W. 461, supra; State ex rel. Knox v. Stevens, 48 N. D. 47, 183 N. W. 109, supra.

It seems to me that such construction of the recall provision of the constitution is much more in accord with the underlying theory of the provision, namely, that a recall election shall be called only when 30 per cent of the qualified electors have manifested their earnest desire and purpose that such election be held by their signatures affixed to and remaining on a petition on file with the officer empowered and required to call the election.

I am authorized to say that Judge BIRDZELL concurs in this opinion.