[File No. 6303.]

STATE OF NORTH DAKOTA EX REL. C. R. VERRY, Appellant, v. WILLIAM MURRAY, Josephine U. Marsh, and A. G. Torgerson, Individually and as the Redistricting Board of Ward County, Respondents.

(260 N. W. 577.)

(Opinion filed May 3, 1935.)

*H. L. Halvorson* and *Nestos, Herigstad & Stenersen,* for appellant.

*Robert W. Palda,* State's Attorney, and *C. E. Brace,* Assistant State's Attorney, for respondent.

Nuessle, J.   Plaintiff, a citizen of Ward county, seeks by mandamus to compel the respondents, respectively the county judge, clerk of the district court and the county auditor of said county, to convene as a redistricting board and redistrict the county pursuant to the provisions of § 3262, Comp. Laws 1913.   Section 3262 provides:  "The county judge, auditor and clerk of the district court of each county shall constitute a redistricting board with power to redistrict the commis-

sioner districts in any county whenever twenty-five per cent of the legal voters of the county, as shall be determined by the votes cast at the last preceding general election for congressmen, shall petition said board to change the boundaries of the commissioner districts and file said petition with the county auditor. Within twenty days after the filing of said petition it shall be the duty of the county auditor to call a meeting of the redistricting board to consider such petition, and if it shall appear that the commissioner districts of such county are not reasonably equal in population or extent of territory they shall proceed at once to redistrict such county into commissioner districts."

. The facts on which the pivotal questions on this appeal turn, may be stated as follows: On April 24, 1934, petitions praying for the redistricting of Ward county were filed with the county auditor. These petitions contained 3,840 signatures purporting to be signatures of legal voters of the county. On May 11, the redistricting board convened to consider such petitions. Prior to such consideration withdrawal statements purporting to be signed by 901 persons whose signatures were on the original petitions were also filed with the county auditor. Thereafter the board considered and passed upon the petitions. The board struck six signatures from the petitions because the signers thereof were not legal voters, seven as duplicate signatures, and eighty because the signatures were not those of the persons purporting to have signed the same. They also considered the withdrawal petitions. They struck therefrom eighteen signatures as duplicates and treated the remainder of the withdrawal signatures as effective to reduce to that extent the valid signatures on the redistricting petitions. Thus the number of valid and effective signatures on the redistricting petitions was held to be reduced to 2,864.

At the general election held in 1932, there were six candidates for "congressman" (sic) for the office of member of the National House of Representatives. See State ex rel. Kirkelie v. Kopriva, 49 N. D. 1040, 194 N. W. 704. Two were to be and were elected. The total number of votes cast for these candidates for congress was 21,704. The total number of electors voting at such election was in fact 13,129. The redistricting board ruled that the numerical sufficiency of the petition for redistricting must be determined by taking as the measure twenty-five per cent of the whole number of votes cast for congressman

at the 1932 election, or 5,426, and that therefore the petitions were not sufficient and effective. The trial court on these facts denied the writ and the case is now before us on appeal from the judgment entered accordingly.

Aside from certain procedural questions which in view of the conclusions we have reached need not here be considered, the appeal turns upon two propositions: First, as to the number of voters who must petition for the redistricting in order to give the redistricting board jurisdiction to act; and, second, whether the voters signing such petition may withdraw their signatures from the same prior to the time that the board acts upon it.

The appellant contends with respect to the first proposition that a petition for redistricting is sufficient if it be signed by legal voters equal in number to one-eighth of the votes cast for all candidates for congress at the last preceding general election. This contention is predicated on the assumption that since two congressmen were voted for and elected the number of voters who voted for candidates for that office must equal half of the total number of votes cast and, therefore, twenty-five per cent of that number meets the requirement of the statute. On the other hand, the respondents insist that the number of signatures required on the petitions is twenty-five per cent of the whole number of votes cast for all candidates for congress. Stated concretely the appellant contends that the number of signatures is 2,713, the respondents that it is 5,426.

Of course the legislature had the right to prescribe the proportion of the legal voters of the county who must petition to bring about a redistricting, and how the number thus prescribed shall be ascertained. By § 3262 it provided that twenty-five per cent of the legal voters must petition; and that the number thus prescribed shall be determined by the vote cast at the last preceding general election for congressmen. But the words and intent of the statute are that twenty-five per cent of the legal voters must petition; not voters equal in number to twenty-five per cent of the votes cast. The provisions of the statute were practicable when but one congressman was elected regardless of the number of candidates for the office. But when two congressmen are elected, as happened in the instant case, difficulties in using the measure thus prescribed are at once apparent. Manifestly, if voters equal in number

to twenty-five per cent of the whole number of votes cast for congressmen be required to sign, the clear intent of the statute will be defeated because where two congressmen are elected fifty per cent of the actual voters must sign the petition if every voter voted for two candidates. On the other hand, in such case, the number of electors voting cannot be ascertained by dividing the whole number of votes cast by two. For though it be assumed that where one congressman is to be elected every voter will vote for a candidate for that office, it is, nevertheless, a well known fact that where two congressmen are to be elected and there are several candidates for each office, numerous voters will vote for but one candidate. The record in the instant case demonstrates this. 13,129 electors voted, yet only 21,704 votes were cast for the six candidates who were seeking the two offices. Had each of the electors voting at the election voted for two candidates, the total number of votes cast for congressmen would have been 26,358. Thus it is undisputable that all of the electors did not vote for two congressional candidates, though some must have done so. And it may be that each voted for at least one candidate. Accordingly, the only possible way of determining the number of electors who voted for congressional candidates is to count the ballots on which votes for such candidates were indicated. This has not been done and it is impracticable to do it. So the only certain means of meeting the legislative requirement is to take twenty-five per cent of the number who actually voted at the election as the number who must sign the petition. Applying this rule the number required in the instant case is twenty-five per cent of 13,129 or 3,283. It follows if the signers of redistricting petitions may withdraw their signatures after the petitions are filed with the county auditor but prior to the time they are considered and acted upon by the redistricting board, that the petitions in the instant case were insufficient and that the action of the board in so holding was right.

A redistricting board acts in a quasi-judicial capacity. It is empowered to pass upon the petitions and determine whether or not the signatures thereon are proper and effective. No provision is made for a review of its decision with respect to these matters. In the absence of a showing of fraud or arbitrary action its determination is conclusive in an action of this kind. See Baker v. Lenhart, 50 N. D. 30, 195 N. W. 16; State ex rel. Dorgan v. Fisk, 15 N. D. 219, 107 N. W. 191.

See also State ex rel. Little v. Langlie, 5 N. D. 594, 67 N. W. 958, 32 L.R.A. 723; Miller v. Norton, 22 N. D. 196, 132 N. W. 1080; Dunham v. Ardery, 43 Okla. 619, 143 P. 331, L.R.A. 1915B, 232, Ann. Cas. 1916A, 1148. Accordingly the board's determination in the instant case as to genuineness of signatures, as to qualifications of the signers as legal voters, and as to duplication of signatures, cannot be disturbed. And if signers of redistricting petitions may withdraw their signatures prior to the time the board acts upon the petitions, the board's determination as to the genuineness of the withdrawal signatures cannot be disturbed.

So the vital question here is as to whether the signers of the petition have the right to withdraw their signatures therefrom prior to May 11 when the board first considered and passed upon the petition.

There is a diversity of holding with respect to the right of signers of such petitions to withdraw their signatures therefrom after the petitions are filed with the board or officer designated by the statute making provision for such petition. The rule with respect to this question is generally that withdrawals are not permitted after the board or officers to whom the petitions are addressed have acquired jurisdiction. The difficulty comes in determining when jurisdiction is acquired. This court has theretofore had occasion to pass upon questions much like that now presented for solution. See Sim v. Rosholt, 16 N. D. 77, 112 N. W. 50, 11 L.R.A.(N.S.) 372; Rosten v. Board of Education, 43 N. D. 46, 173 N. W. 461; State ex rel. Knox v. Stevens, 48 N. D. 47, 183 N. W. 109; Coghlan v. Cuskelly, 62 N. D. 275, 244 N. W. 39. See also in this connection Territory ex rel. Stockard v. Roswell (Territory ex rel. Stockard v. Veal) 16 N. M. 340, 117 P. 846, 35 L.R.A.(N.S.) 1113; Uhl v. Collins, 217 Cal. 1, 17 P. (2d) 99, 85 A.L.R. 1370, and note.

As we said in Coghlan v. Cuskelly, supra: "Many cases may be found in the books touching upon the right to add to or withdraw signatures from jurisdictional petitions. These cases arose under a variety of conditions and circumstances. They disclose that there is a marked diversity of holding with respect to the question of the right to withdraw. This is illustrated by the cases cited in note to Sim v. Rosholt, 11 L.R.A.(N.S.) 372, supra. See also cases cited in notes in 15 Ann. Cas. 1125; Ann. Cas. 1916B, 823;

35 L.R.A.(N.S.) 1113; 50 L.R.A.(N.S.) 195; L.R.A.1916D, 1102, and L.R.A.1917B, 15. But almost without exception each of these cases turns upon the wording of the particular ordinance, statute or constitutional provision under which it arises, and is of no great value as a precedent except in the consideration of a similar provision."

The statute in the instant case, § 3262, supra, provides that "Within twenty days after the filing of said petition it shall be the duty of the county auditor to call a meeting of the redistricting board to *consider* such petition. . . ." It seems to us that the statute contemplates that the board shall have no jurisdiction in the premises up to the time that such petition is thus considered and passed upon by the board; that the county auditor is simply the officer with whom the petition is deposited and who, after it is so deposited, acts to call the board together to consider the petition. The auditor has no discretion in the matter if prima facie the petition is sufficient. He cannot pass finally upon questions going to its sufficiency. The board itself must do this. And if the petition is sufficient the board must act in the performance of the duty imposed upon it by the statute. Thus considered the instant case aligns itself with State ex rel. Knox v. Stevens, 48 N. D. 47, 183 N. W. 109, and Rosten v. Board of Education, 43 N. D. 46, 173 N. W. 461, supra, and the rule in these cases must apply.

The judgment of the district court was right and must be affirmed.

BURKE, Ch. J., and BURR and CHRISTIANSON, JJ., concur.

MORRIS, J., not participating.